No. 12,685.

H. T. SIMON-GREGORY DRY GOODS COMPANY ET ALS. VS. H. & C.
NEWMAN ET ALS.

While fraud is never to be presumed, courts of justice "recognize the cunning
concealment in which it shrouds its devious practices, and the difficulty of
tracing it by direct proof."

Hence, they are warranted in giving due weight to all circumstances indicating its
existence, and when such circumstances and the reasonable inferences, deduc-
tions and conclusions to be drawn from facts proven are of a character to force
conviction on the mind, they are justified in finding fraud.

APPEAL from the Second Judicial District Court for the Parish of
Bienville.   *Watkins, J.*

* *Dorman, Reynolds & Dorman* for Plaintiffs, Appellees.

*E. T. Lamkin* and *Percy Roberts & Boatner* for Defendants, Appel-
lants.

Argued and submitted January 10, 1898.
Opinion handed down May 7, 1898.

The opinion of the court was delivered by

BLANCHARD, J.   The facts and issues of this case are identical
with those presented by the interventions in Suit No. 12,518 on the
docket of this court, entitled H. & C. Newman vs. Baer & Levy—
Crawford, Jenkins and Booth *et als.*, intervenors, decided at the
December, 1897, term.

This is a direct attack by certain creditors on the attachment sued
out by H. & C. Newman against Baer & Levy in the case mentioned,
which attachment was therein attacked by certain other creditors,
who made themselves parties by intervention.

Some additional testimony was, in this case, adduced on behalf of
the complaining creditors, which but serves to strengthen the case
as presented in the earlier suit.

The conclusion arrived at in the first case, after a thorough and
careful consideration, was that the judgment appealed from, which
was in favor of the intervenors, was correct and should be affirmed.

It was held, substantially, that a clear case had been made out of conspiracy, or fraudulent and collusive agreement and understanding, consummated between Baer & Levy and the agents of H. & C. Newman, the object and purpose of which was the attachment of all the property of the insolvent firm of Baer & Levy, and the garnishment of their best customers and debtors, for the twofold purpose (1) of securing payment of the Newman claim through an unfair and fraudulent preference over the other creditors, exerted under cover of one of the writs of the law; and (2) of shielding the property from the pursuit of the other creditors with the view, eventually, of enabling Baer & Levy to control and utilize and derive the benefit of the same through the use of either the name of H. & C. Newman, or that of some other person.

The case now at bar presents alike the duty and opportunity of a re-examination of the questions at issue and decided in the first case, and we rise from this re-examination with our convictions fortified as to the correctness and justice of the decree therein rendered.

Judicial records will be searched in vain for a case wherein the evidence discloses a more bold attempt to give, on the part of the debtor, and to derive, on part of a favored creditor, a fraudulent preference under the forms of the law. Nor can we call to mind a case in which the testimony exposes more thoroughly an effort on the part of an insolvent debtor to cover up and shield from his other creditors his property and assets, using for the purpose the name and claim of a conniving creditor, who, by means of the same transaction, is to obtain payment in full of the amount due him, while his less fortunate co-creditors are despoiled.

We do not deem it necessary, in this opinion, to review anew the entire evidence establishing the collusive and fraudulent agreement and action by which this was done.

Inviting reference to the opinion of the court in the first case, this opinion is intended as a supplement thereof.

As part of [the fraudulent understanding between the representatives of the Newmans and Baer & Levy, it should be stated that the goods of the latter seized under the Newman attachment, and which were valued in the sheriff's inventory at seven thousand four hundred and twenty-seven dollars and sixty-five cents, were forced to sale at public auction (with the exception of a small lot) by the plaintiffs in that suit, on the allegation that they were of a perisha-

ble nature, and were sold in block and bought in by the agent of the Newmans for three thousand two hundred dollars.  Baer & Levy assented or acquiesced in this sale *in globo*, which prevented the property from bringing anything like its true value, though a vigorous protest against the sale in that way, and a demand that the goods be sold in itemized lots, was made on behalf of the other creditors.

It was in the power of Baer & Levy to have demanded that the effects seized be sold separately.   C. P. 261, 676.

The grounds of attachment existing when the Newmans sued out their writ must be held sufficient as between Baer & Levy and H. & C. Newman, *for the reason* that Baer & Levy have not contested the same, and plaintiffs herein have no interest to set aside the attachment except to the extent that it militates against their rights.  But inasmuch as the said grounds of attachment were part and parcel of the collusive and fraudulent agreement and understanding between Baer & Levy and the agents of H. & C. Newman, it must be held that the same were *not* sufficient to sustain the attachment so far as the complaining creditors are concerned.

It is urged on behalf of H. & C. Newman that no weight or credit should be given to the testimony of H. B. Coyle, who was called as a witness for the complaining creditors.

Coyle was the managing clerk of Baer & Levy and had knowledge of the conspiracy concocted between them and the agents of H. & C. Newman, out of which was evolved the attachment complained of.

That part of the plan by which the stock of goods attached should, after being bought in by H. & C. Newman, be turned over to Baer & Levy to be utilized for their benefit under cover of the name of another—in the continuation of which business Coyle was to be employed—had failed, no doubt through the attitude of the other creditors, who threatened to take and did take action to annul the attachment for fraud.  Coyle was, therefore, out of the employment of Baer & Levy, had no longer any connection with them, and no motive to conceal what he knew, or to keep back the truth in regard to the attachment and the fraudulent collusion which brought it about.

He had a claim for three hundred and twenty-five dollars for clerk hire, which rested as a privilege on the goods seized and primed that of the attaching creditors.  He desired the Newmans to anticipate

the payment of this amount, pay it themselves and hold it against the stock of goods which they had bought in at the sheriff's sale, the proceeds of which, while nominally in the sheriff's hands, were really retained in their own hands by an arrangment made with the sheriff.

The evidence discloses that David March, agent of H. & C. New-man, arranged with I. Baer, a merchant at Monroe, and a friend and customer of the Newmans, to pay Coyle $100 on this claim, and Baer did pay him in money and merchandise $80 on it. Angered, no doubt, because of the delay in realizing on the remainder, and because of the dishonor of his draft on I. Baer for same, drawn by direction of A. Levy, of the firm of Baer & Levy, Coyle's relations with Baer & Levy and the Newmans ceased to be cordial, or, per-haps, friendly, and in this condition of mind he revealed in conver-sation enough to the attorneys for the complaining creditors to con-vince them he would prove a valuable witness for their side of the controversy. They determined, therefore, to subpœna him, but it would be some time before court would meet, and Coyle, it appears, had made arrangements to remove to Wills Point, Texas, and go into business there and would shortly leave the parish. To the request to remain within reach of the process of the court until April, when court would convene, he replied he could not, as he must do something to support his family and was going to Texas for the purpose. Whereupon an offer was made to him, on behalf of the complaining creditors, to compensate him for the time he would lose by remaining in the parish and subjecting himself to the process of the court as a witness in the case. It was several months before court would sit and the offer was to pay him three hundred dollars, part cash and the remainder by way of the cancellation of a small judgment held against him. He accepted this offer and agreed to remain in the parish and did so. He was subpœnaed and testified. The offer covered his remaining in the parish only. It was not predicated on the kind or character of evidence he was to give. He admits that prior to this offer he had proposed to the Newmans that if they would pay, or advance the amount due him for clerk hire he would be gone from the State, and would not be in the parish to testify when the case was called for trial, and Newman, it seems, had written him referring him to I. Baer, and stating that their agent, March, would instruct Baer to make "arrangements to suit." While part of the amount was paid by Baer, as we have seen,

definite " arrangements to suit," as to the balance due, were delayed so long that meanwhile the agreement was consummated with the complaining creditors to remain in the parish and appear as a witness.

While the connection of Coyle with the transactions under review, his attitude toward the parties thereto, and his devious ways and declarations in regard to his appearance or non-appearance as a witness, can neither be endorsed nor commended, the trial judge, who saw and heard him testify, and who knew him, believed the statements he made on the witness stand, and so do we.

Besides, we find in the record abundant corroboration of much of what he testified to.

It is insisted on behalf of defendants herein that the doctrine announced in this and the preceding case of Newman vs. Baer & Levy is in conflict with the decisions of this court in the Rawlins case, 45 La. An. 58, and the Claflin case, 47 La. An. 1447. We hold otherwise. In those cases the evidence showed the grounds upon which the attachments rested were not the result of combination, collusion and fraud between the attaching creditors and the debtor, but that the plaintiff's right to attach arose from acts of the debtor with which neither the plaintiffs, their agents or representatives, were in any manner connected.

This being so, it was held that the *consenting* attitude of the debtor did not vitiate for fraud an attachment good upon other and independent and non-collusive grounds.

In the instant case we do not think the facts unconnected with the Newmans, or their representatives, warranted an attachment. March, the agent of Newman, gives as the ground for attachment the shipment by Baer & Levy of cotton to a party in Monroe when the firm was under pledge to ship all cotton to H. & C. Newman. It was on this information that he sued out the writ, and he says he acquired this knowledge *the day before* the attachment from Levy, of the firm of Baer & Levy, while in the store of the firm in the town of Bienville.

In the first place this shipment of cotton to Monroe was not, of itself, sufficient grounds for attachment. Winter vs. Davis, 48 La. An. 260.

In the second place, what cotton Baer & Levy shipped to Monroe was consigned to I. Baer, the brother of L. Baer, of Baer & Levy.

I. Baer was not a cotton factor, or a dealer in cotton, but a retail merchant. He was the close friend of H. & C. Newman, a large customer of theirs, and represented them in business matters at Monroe, and is the same " I. Baer," who, shortly after the attachment, under instructions from the Newmans and their agent, March, paid H. B. Coyle part of the amount due Coyle for clerk hire while in the employment of Baer & Levy.

While fraud is never to be presumed, courts do "recognize the cunning concealment in which it shrouds its devious practices and the difficulty of tracing it by direct proof," and giving due weight to all circumstances surrounding the shipment of this cotton to I. Baer, and the facts bearing on the same disclosed by the record, the conviction can not be escaped that it was consigned to him by pre-arrangement between the parties, and that the said I. Baer, in all likelihood, accounted for it or its proceeds to the Newmans.

In the third place, the testimony shows the attachment had been arranged for before March ever went to Bienville to worm out of Levy the alleged secret of the shipment of cotton to Monroe. It appears that the attorneys had been engaged before he even arrived at Monroe, where he stopped before going to Bienville. One of them, who resided at Bienville, had been wired by the other, who lived at Monroe, to come to Monroe two or three days before the attachment was run, and he went. L. Baer, senior member of Baer & Levy, lived at Monroe and was there when the attorney arrived from Bienville and March arrived from New Orleans, and it can not be doubted that these parties, then and there, arranged definitely for the attachment, already determined on, and the going of March to Bienville the next day was really an unimportant step in the programme. As affording a glimpse at the hidden features of this visage of fraud, it might be mentioned that March, while at Bienville, had no conversation with H. B. Coyle. Yet he was sent to Bienville *to investigate* on the strength of Coyle's letter to his employers. He did not seek further information from the writer of the letter, though he was in the store of Baer & Levy while March was there. There is no need to state the inference to be drawn from this. It readily appears.

Counsel for the Newmans urge as grounds for the attachment that Baer & Levy were converting their property into cash and negotiable

assets with the view of placing the same beyond the reach of their creditors, or giving an unfair preference to some of them.

March, who, as Newman's agent, made the oath for attachment, puts it on entirely different grounds, and well he might. After having their clerk, Coyle, to virtually notify H. & C. Newman it was time to attach, Baer & Levy instructed Coyle to proceed to close up as many accounts as possible by notes, and the notes so taken were entrusted to Coyle's keeping and held for easy seizure under the attachment. They were at once turned over to the sheriff when he seized for Newman, the latter's attorney telling him they were at Coyle's house and to go there and taken possession of them. The taking of these notes, instead of furnishing Newman with legal grounds to attach, must, in the view we take of the case, be considered part of the collusive understanding and agreement by which the way was prepared for the attachment.

Taking the notes to turn over to Newman might have been grounds for other creditors to attach, but not for Newman, for whose benefit they were taken and who actually received them through the sheriff's seizure.

The justification of the attachments subsequently sued out by the other creditors was the preference shown or attempted to be shown the Newmans.

Judgment affirmed.