(82 South. 89)

No. 23350.

APPALACHIAN CORPORATION v. AYO.

(May 5, 1919. Rehearing Denied June 2, 1919.)

*(Syllabus by Editorial Staff.)*

1. CORPORATIONS  ⊂⊃80(8) — SUBSCRIPTIONS FOR STOCK—ACTION FOR PRICE—DEFENSES.

Fraudulent representations by representative of corporation as to dividends and value of property owned by the corporation may be set up as a defense in an action by the corporation on notes given for stock.

2. PLEADING  ⊂⊃350(3) — RULE FOR JUDGMENT—ADMISSIONS.

Rule to take judgment for plaintiff on the face of the pleadings admits all allegations of fact in the answer for that purpose.

3. BILLS AND NOTES  ⊂⊃497(5)—DEFENSES—BURDEN OF PROOF.

In an action by an assignee of a note, where defendant proved fraud, which would have been a good defense against the payee, he established a prima facie defense, and cast the burden upon the plaintiff to prove that he was a bona fide holder before maturity and without notice of fraud.

Appeal from Twentieth Judicial District Court, Parish of Lafourche; H. M. Wallis, Judge.

Action by the Appalachian Corporation against Dr. Jackson J. Ayo. From a judgment in favor of plaintiff, defendant appeals. Reversed and remanded.

Robert H. Marr, of New Orleans, and Caillouet & Caillouet, of Thibodaux, for appellant.

Howell & Wortham, of Thibodaux, and Hall, Monroe & Lemann and Walter J. Suthon, Jr., all of New Orleans, for appellee.

DAWKINS, J. This is an appeal by the defendant from a judgment rendered in favor of plaintiff on the face of the pleadings.

The suit is upon two promissory notes, for $1,500 each, due June 1 and September 1, 1917, with interest and attorney's fees.

Defendant admits giving the notes, but seeks to escape liability thereon on the ground of alleged fraud and misrepresentation. He avers: That during the years 1915 and 1916 he bought certain shares of stock in the Federal Fruit & Cold Storage Company, for some of which he paid cash, and for other shares part cash and for the balance gave his two notes to said company for the sum of $1,500 each. That he was induced to buy the stock of the said Federal Fruit & Cold Storage Company by one Frank J. Mangham, who was the fiscal agent of said company, vested with exclusive control over the sale and disposition of said stock. That said Mangham represented to him that the said company would soon be taken over by the United Fruit Company at a largely increased price to the stockholders over the amount invested, whenever the same could be done without violation of federal statutes. That Mangham further represented that he had been requested by the president of the Pan-American Life Insurance Company to call upon defendant and invite him to take stock in said Federal Fruit & Cold Storage Company, inasmuch as he was a stockholder in said life insurance company, and was entitled to be let in on a "good thing." That a dividend of 6 per cent. had been declared

upon said stock out of earnings the year before. That the company had on hand a sum sufficient to pay a large dividend during the year in which his stock was bought, and that the company was the owner of real estate of the value of $159,000. That all of said representations were false and fraudulent, the truth being that no such request had been made by the president of the Pan-American Life Insurance Company. That the said dividend had been illegally and fraudulently paid out of the proceeds of stock, and that there were no funds on hand with which a dividend could be legally paid during the year in which his stock was purchased, and that the real estate was not worth in excess of $10,000. He further averred that, when the last lot of stock was purchased by him in 1916, the said Mangham had, for the purpose of inducing defendant and others to take stock in said company, obtained from two other individuals signed subscriptions for $20,000 worth of stock each, as well as their checks for said amounts; that the said subscriptions and checks had been lithographed and were presented to defendant as evidencing bona fide subscriptions to said stock, when in truth and in fact the said Mangham and the said corporation had, shortly after receiving the same, returned their money to the said individuals and canceled their said subscriptions.

Defendant also made the following allegations in regard to plaintiff's connection with the said matters:.

"14. Now your respondent is informed, and being so informed believes and alleges, that plaintiff, desiring to become possessor of the assets of the Federal Fruit & Cold Storage Company, entered into a conspiracy with said James L. Wright (president) for the purpose of acquiring said assets; that said James L. Wright, taking advantage of his position as president of the Federal Fruit & Cold Storage Company, and said Frank J. Mangham, by virtue of having become acquainted with the stockholders, procured such proxies as they could for meetings to be held in February, 1917, of directors and stockholders; that, before said meeting was called to order, said Wright informally discussed with such stockholders as were present and had not sent proxies that either the assets of the Federal Fruit & Cold Storage Company would be turned over to the Appalachian Corporation, plaintiff herein, upon terms to be submitted at the meeting thereupon to be held, or that the Federal Fruit & Cold Storage Company would be thrown into the hands of a receiver and the stockholders get nothing.

"15. Now your respondent shows that said James L. Wright procured the election of himself, with Peter M. Joachim and H. G. Parker, as liquidators, and that said James L. Wright assumed, without the intervention of or consultation with his coliquidators, the entire liquidation of the affairs of the said Federal Fruit & Cold Storage Company.

"16. Your respondent shows that, instead of discharging the duties of liquidators, said liquidators transferred to the plaintiff all of the assets of the Federal Fruit & Cold Storage Company, taking in exchange therefor the wholly worthless so-called securities of plaintiff corporation.

"17. Now your respondent shows that at the time of said transfer there was in the treasury of the said Federal Fruit & Cold Storage Company $123,617.72 in cash, stock subscription notes amounting to $60,946.21, and the real estate, not of any great value, but hereinabove described, among which said notes so turned over were the notes of respondent given in payment of stock subscriptions as hereinabove outlined.

"18. Now your respondent alleges that he is informed, and being so informed believes, that the said Wright, whose duty as president of the Federal Fruit & Cold Storage Company was to devote his best talents to furthering the purposes of that company, instead of so doing did engineer said sale and did receive therefor from plaintiff the sum of $50,000."

Defendant further alleges that the said transfer was altogether null, void, and of no effect, for the reason that the duty of the liquidators was to convert the company's assets to cash and distribute the same, and that under the guise of a sale there was simply a consolidation of the two companies, which was not effected in the manner pointed out by law, and that therefore the plaintiff acquired no title whatever to said notes,

and, even if it had acquired them, the same were taken subject to all equities.

He further avers that he had no knowledge of the frauds alleged at the time the original notes were given, or at the time the renewals were delivered to plaintiff, and on which it now sues.

Defendant reconvenes for the amounts paid by him for said stock.

Plaintiff filed an amended petition, alleging that the defendant had repeatedly acknowledged his liability on said notes, after the same had come into its hands, and had written several letters to that effect, begging for extensions and promising to pay, all of which were attached and made part of the amended petition.

Defendant answered the amendment, admitting that he had written the letters referred to, but averring that he had not, at the time they were written, discovered that the frauds charged had been practiced upon him.

[1-3] We think that, in so far as the answer charges fraudulent misrepresentation as to dividends, value of real estate, etc., it does state a defense which, if proven, would have been good against the Federal Fruit & Cold Storage Company, if it were the plaintiff suing on the notes. Of course, the rule to take judgment on the face of the papers admits all allegations of fact in the answer, for that purpose. This being true, the burden rested upon plaintiff to prove that it was a bona fide holder before maturity and without notice of such fraud. On a trial, had the defendant proved what he has alleged, he would have established a prima facie defense, good until plaintiff overcame it with proof of good faith and want of knowledge of such equities. Joyce on Defenses to Negotiable Paper, § 119, p. 143; 3 R. C. L. p. 1033; Neg. Ins. Law, § 59 (Act 64 of 1904).

For the reasons assigned, the judgment appealed from is set aside and reversed, and this cause is hereby remanded to the court below, to be proceeded with according to law and the views herein expressed. Appellee to pay the costs of this appeal.

MONROE, C. J., not having heard the argument, takes no part.