No. 340

First Circuit ·

STEVENS v. GAUDE

(December 4, 1928.  Opinion and Decree.)
(January 9, 1929.  Rehearing Refused.)
(February 11, 1929.  Writ of Certiorari and Review Denied by Supreme Court.)

J. Oliver Bouanchaud and Clyde C. Ratcliff, of Baton Rouge, attorneys for plaintiff, appellee.

F. J. Whitehead, of Port Allen, attorney for defendant, appellant.

ELLIOTT, J.  Frederick LeRoy Stevens claims of Orestide J. Gaude $480.00, with interest and attorney's fees thereon. The claim is based on six promissory notes executed and signed by said Gaude, payable to the order of the Brenard Manufacturing Company. The Brenard Manufacturing Company endorsed the notes to plaintiff Stevens, and he endorsed them to any bank or banker for collection only.

The defendant denies that he owes the notes, and claims that he should not be compelled to pay them. He alleges that he signed and delivered them to the Brenard Manufacturing Company in payment for six Heraldyne Radio Receiving Sets, guaranteed by the Brenard Manufacturing Company to operate satisfactorily, and to be free from defects. That the instruments were defective and unsatisfactory, and he could not place an order for, nor sell them. That under the agreement whereby he bought them, it was stipulated in the event the amount of the notes was not realized from the sale of the sets, that the difference would be paid by the Brenard Manufacturing Company, or that the Brenard Manufacturing Company would repurchase the sets. That he endeavored to sell them, but no sale could be made because of the poor workmanship of, or due to the defects of the instruments. That therefore, no consideration existed for said notes at the time they were executed and delivered to the Brenard Manufacturing Company.

The defendant denies that the plaintiff, Stevens, is the holder and owner of the notes in good faith for value in due course before maturity, and alleges that plaintiff had notice of the Brenard Manufacturing Company's defective title. That the endorsement made by the Brenard Manufacturing Company was not a legal endorsement and carried no title to said Stevens.

There was judgment in favor of the plaintiff, and defendant has appealed.

Objections were urged on the trial to the admissibility of the contract signed by the defendant and the Brenard Manufacturing Company, to which the notes were attached at the time they were signed. The contract in question is annexed to and made part of the testimony taken and introduced by the plaintiff. The objections are not urged in plaintiff's brief, and we take it that all objections on that account have been abandoned.

The testimony of the defendant Gaude, corroborated by his son and two other witnesses, shows that the Radio Receiving Sets were not satisfactory, and that for some reason they would not work, and could not be made by him to do so in a satisfactory manner. That they were therefore not saleable. There was no evidence to the contrary. We therefore find that the notes are and were without consideration at the time they were executed. That the title of the Brenard Manufacturing Company to the notes was defective at the time plaintiff claims to have acquired them, and that the Brenard Manufacturing Company could not, for said reason collect them against the defendant.

The notes having been executed and delivered to the Brenard Manufacturing Company in this State, they constitute a Louisiana contract, and are governed by the laws of this State.

The answers of the plaintiff Stevens were obtained by interrogatories propounded to him by defendant. The testimony of Stevens and that of J. L. Record was also taken in Iowa City, Iowa. The examination in Iowa City was conducted by G. A. Kenderdine, attorney of that city, for the plaintiff, and by William R. Hart, attorney, also of that city, for the defendant.

The testimony taken at Iowa City shows the Brenard Manufacturing Company to be a partnership composed of J. L. Record and T. O. Loveland as equal partners, and that they have been in business, conducting it in said name and style since 1902, dealing in phonographs and supplies, and radios and supplies.

The plaintiff Stevens, and J. L. Record claim in their direct examination, that he, Stevens, has never been employed by the Brenard Manufacturing Company in any capacity. That he has no interest in their business. That they never borrowed any money from him. That they have sold him notes a number of times, always selling them outright. Mr. Record testifies that the Brenard Manufacturing Company guarantees their goods absolutely, and stands back of them unqualifiedly. Mr. Record testifies that the Brenard Manufacturing Company sold Mr. Stevens the Gaude notes together with a bunch of other notes, due by various parties, on October 14, 1926. That the notes amounted in the aggregate to $5507.33. That the price $4846.45, was received from him at the time by means of a check which was cashed.

Mr. Stevens testified to the purchase in the same terms. He further testified that he was an attorney at law, engaged in active practice, and an investor. Both Stevens and Record claim that the Bre-

nard Manufacturing Company have no interest in the notes. Mr. Stevens testifies that he did not know what the notes had been given for, was not aware of any infirmity in the title of the Brenard Manufacturing Company, and had no reason to believe that there would be any difficulty in collecting the notes when they fell due.

But both Stevens and Record make statements and admissions on cross-examination, from which it seems to us that their claim of Stevens being the owner and holder of the notes cannot be maintained. Our conclusion is that Mr. Kenderdine, although conducting the examination in Iowa City in the name of and ostensibly as the attorney for Mr. Stevens, was, in fact, not his attorney therein, nor in his employ nor working in his behalf, but was the attorney for the Brenard Manufacturing Company, and that in bringing and prosecuting suit on these notes and in the employment of local counsel for the purpose, he was in fact acting for and working in the interest of the Brenard Manufacturing Company. Mr. Stevens, in his testimony on this subject, commencing at the bottom of page 20, and continuing on pages 21 and 22, says in response to questions:

"Q. Is there not a tacit agreement between you and the owners of the Brenard Manufacturing Company whereby the attorney for the Brenard Manufacturing Company handles all the Brenard notes, and the said company pays all expenses incidental to the collection thereof?
"A. There isn't any tacit agreement to that effect, but there is an actual agreement, namely, that the Brenard Manufacturing Company agreed when they sold notes to me, to defray any expenses that might arise in the collection of any notes that they sold me; and that holds good with these notes and all other notes that I bought from them, and I would not have bought them, if I had not had that kind of arrangement.

"Q. Is Mr. Kinderdine your attorney in other matters, than actions upon similar notes as these in controversy?
"A. Mr. Kinderdine isn't my attorney in any other matter.
"Q. Who are the attorneys employed by you in Baton Rouge, Louisiana?
"A. Mr. Clyde C. Ratcliff is the attorney in this case.
"Q. Who hired him?
"A. Mr. Kinderdine.
"Q. Did you ever have any correspondence with him about this suit, with reference to employing him as your attorney?
"A. I did not."

Continuing along the same line he says that the fee of the local attorney is contingent upon his success, but if not, the Brenard Manufacturing Company pays him. That Mr. Kenderdine is attorney for the Brenard Manufacturing Company; that a large part of his business is for the Brenard Manufacturing Company, but he handles other business.

(Page 24):

"Q. Mr. Kenderdine or the Brenard Manufacturing Company selects the attorney in the home city of the maker when a note is not paid by the maker and sends the note for collection to that attorney. Is that not true?
"A. When these notes are turned over to Mr. Kenderdine for collection, I leave it entirely to him as to the procedure of collecting in the matter. The selection of the attorney and so on, is left to him."

He further says that he could be absent from his business a year or more and the collection would go on just the same, but that the purchase of the notes would not go on.

Referring to the question of delivery Mr. Stevens testified that Mr. Record endorsed the notes and delivered them to the bank at Iowa City, by his direction, on October 14, 1926. That he left them with the bank for collection.

(Page 25):

"Q. When money is paid in by a maker of such notes as these in controversy, is it not placed in a special bank account in your name to be used for the purpose of purchasing other notes from the Brenard Manufacturing Company under the plan you testified to?

"A. Some times it is, and some times it is taken by me and used for other purposes. It depends on the condition of my finances at the time, and what I wish to do with the money."

Mr. Stevens in answering the interrogatories propounded to him by the defendant on July 21, 1927, said in answer to the sixth question:

"At the time I purchased the notes none of the notes were yet due, and, of course, had not been presented to the defendant. After I purchased the notes, they were deposited by me in the bank at Iowa City for collection, and were forwarded as they became due through the bank to its correspondent, and presented by the correspondent bank to the maker, O. J. Gaude, and payments were refused thereon."

In answer to the seventh interrogatory propounded to him by defendant on July 21, 1927, he said:

"I know that the Brenard Manufacturing Company never did turn these notes over to any one for collection. After I purchased the notes, and payment was refused, I turned them over to a local attorney, Mr. Kenderdine, and requested him to collect them, and he in turn took the matter up with Laycock, Borron & Laycock at Plaquemine, but did not employ them to bring action on the said notes."

Mr. Record says that the Brenard Manufacturing Company had an agreement with Mr. Stevens, when they sold him notes, that they were to endorse them, and if there was any expense arising in the collection of any of the notes, the Brenard Manufacturing Company would defray the expenses. That they advanced the Court costs and other expenses attached to the Stevens law suits on the Brenard Manufacturing Company notes.

(Page 39):

"Q. When the notes are not paid which have been sold by your Company to Mr. Stevens, Mr. G. A. Kenderdine acts as Iowa City attorney for Mr. Stevens, does he not?

"A. Yes, sir.

"Q. Mr. Kenderdine is employed by your Company as its attorney by the year, is he not?

"A. Mr. Kenderdine is retained by us to handle a large portion of our business on an annual retainer.

"Q. And his office rent and stenographer's expense and all other expenses are paid by your Company, are they not?

"A. His office rent, stenographer's expense and all other expenses are charged against his office in figuring up a settlement at the end of the year.

"Q. And through Mr. Kenderdine, attorneys are employed in the home counties of the makers of these notes with authority to sue the maker, is that not so?

"A. Yes, sir."

Mr. Record further testified that the fees of the attorneys are usually taken out of the money collected by them, but if not, the Brenard Manufacturing Company pays them. The Brenard Manufacturing Company advances all Court costs, and if the suit is lost, the entire loss is on them. The Brenard Manufacturing Company makes good any loss to Mr. Stevens, on the ground that they are liable as endorsers to Mr. Stevens, for any loss on the notes.

On the question of delivery, Mr. Record testified that he endorsed the notes to Mr. Stevens, and delivered them to the bank at the order of Mr. Stevens. It thus appears from the testimony of Messrs. Stevens and Record, on March 6, 1928, that Mr. Record delivered the notes to the bank by the direction or request of Mr. Stevens, but according to the testimony of Mr. Stevens

on July 21, 1927, he deposited them in the bank for collection, himself. Messrs. Stevens and Record testified on March 6, 1928, that Mr. Kenderdine took the notes in hand for collection by virtue of his employment as attorney for the Brenard Manufacturing Company, but Mr. Stevens, testifying on July 21, 1927, says that he, himself, turned the notes over to Mr. Kenderdine and requested him to collect them.

The agreement mentioned by Messrs. Stevens and Record, under which the Brenard Manufacturing Company, as endorsers, undertook to make good any loss that Mr. Stevens might incur on notes purchased from them, would have been all right, if it had been seriously entered into and carried out in pursuance of a business transaction. But it is the intent, and the act done pursuant thereto, that governs.

In the same way, the admission of Mr. Stevens, that the money paid in by the makers of the Brenard Manufacturing Company notes, is: "Some times placed in a special bank account," in his name for the purpose of purchasing other notes from the Brenard Manufacturing Company, is all right or all wrong, according to the intent in mind. In this case, the admission leaves it for surmise whether the proceeds of the notes in question are to be placed in a special bank account in his name, to be again used in the same way. If the proceeds are replaced, as collected, in the bank, for the purpose of giving a false negotiation of notes the cloak of a real one, then the deposit in the bank, cannot make truth out of an untruth.

Taking all the facts and circumstances on the subject into account, it is our conclusion that these notes were never negotiated and delivered to Mr. Stevens in the execution and performance of an intent to sell them to him outright, as the plaintiff claims, but that the transaction between Mr. Stevens and the Brenard Manufacturing Company was merely a plan whereby the notes were sued on in the name of Mr. Stevens for the purpose of cutting off the equity of the makers. That the Brenard Manufacturing Company remained the real party in interest, and as such, are in pursuit of same in this case.

"The evidence in proof of conspiracy will generally, from the nature of the case, be circumstantial. Though the common design is the essence of the charge, it is not necessary to prove that the defendants came together and actually agreed in terms to have that design and to pursue it by common means. If it be proved that the defendants pursued by their acts, the same object, often by the same means, one performing one part and another, another part of the same so as to complete it, with a view to the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object." Greenleaf, vol. 3, section 93, 12th Ed.

The plan between the plaintiff and the Brenard Manufacturing Company may be established in the same way. Regnier vs. La. State Marine & Fire Ins. Co., 12 La. Ann. 336; Cecile F. M. C. vs. St. Denis F. W. C., 14 La. Ann. 184; Johnson vs. Mayer, 30 La. Ann. 1203; Simon Gregory et al. vs. H. & C. Newman et al, 50 La. Ann. 338, 23 So. 329.

The testimony of Messrs. Stevens and Record shows that the control of these notes never passed out of the hands of the Brenard Manufacturing Company. Their testimony justifies the conclusion that the Brenard Manufacturing Company, acting through Mr. Kenderdine, their attorney, handles them as they see best. Acting through Mr. Kenderdine, they authorized this suit against Mr. Gaude.

Mr. Stevens is a practicing attorney, engaged in active practice at Iowa City. A

large part of his practice is collection work, yet, he leaves the collection of these notes, and the institution and prosecution of suits thereon, entirely in the hands of Mr. Kenderdine, who acts in his name, but under the authority of the Brenard Manufacturing Company. Mr. Stevens could be absent from his office a year and the collection would go on in his absence just the same. This shows lack of proprietary interest in the notes on the part of Mr. Stevens, and the existence of a proprietary and controlling interest therein on the part of the Brenard Manufacturing Company.

Mr. Stevens refused to say how many notes of this kind had been placed in the hands of attorneys for collection, refused to give the names and addresses of attorneys with whom notes of this kind had been placed for collection, and declined to give any information along that line. It may be that he did not know, but if he does not, it tends to further indicate a lack of interest in the notes. He knew that a transfer of same to him before maturity in good faith on his part, and for valuable consideration paid, would cut off the equity of Mr. Gaude.

Mr. Record, questioned as to how many notes obtained in payment of radio sets had been contested and placed in the hands of attorneys for collection, also refused to say, but he says that the Brenard Manufacturing Company have disposed of six to eight hundred thousand dollars worth of such notes, and that Mr. Stevens was one of their purchasers; that they had sold Mr. Stevens at least a hundred thousand dollars worth within the last twelve months.

Mr. Stevens admits that he never made any investigation as to the financial solvency of the maker of these notes, but accepted the assurance of the Brenard Manufacturing Company as to his rating. He was aware that in every case in which the payment of notes, acquired from the Brenard Manufacturing Company had been resisted, that the defense was fraud, misrepresentation and failure of consideration, which, he says, is the standard defense of people who try to get out of their obligations. He admits that he made no effort in the present case to find out if such defense would be made.

Mr. Record testified that it was not his idea in negotiating these notes to deprive the maker of his equities against the Brenard Manufacturing Company, and yet the Brenard Manufacturing Company did that very thing in the present case. The admission that Gaude's telegram: "Radios unsatisfactory, cannot sell same, cannot handle propositoin, Advise disposal sets," was received by the Brenard Manufacturing Company before the pretended transfer of the notes to Mr. Stevens, would have that effect, if effective.

The failure of consideration is a good defense against any person not a holder in due course. Act 64 of 1904, Sec. 28.

An instrument is negotiated when it is transferred from one person to another in such a manner as to constitute the transferee the holder thereof. Sec. 30.

To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith. Sec. 56.

In Lanfear vs. Blossman, 1 La. Ann. 148, at page 156 (45 Am. Dec. 76), the Court approvingly quotes the following from Story on Bills of Exchange, Section 194:

"What circumstances will amount to actual or constructive notice of any defect or infirmity in the title of the bill, so as to let it in as a bar or defense against a holder for value, has been a matter of much discussion and of no small diversity of judicial opinion. It is agreed on all sides that express notice is not indispensible, but will be sufficient if the circumstances are of such a strong and pointed character as necessarily to cast a shade on the transaction and to put the holder on inquiry."

In Hays vs. Lapeyre & McCaleb, 48 La. Ann. 749, 19 So. 821, 35 L. R. A. 647, the Court held:

"There are circumstances which place the holder of paper in circulation, upon inquiry, without direct notice of any infirmity of title."

When the evidence has shown that the title of the party who first obtained the note is defective, then the burden of proof is upon the party obtaining it from the first party to show that he acquired it without notice, in due course, for valuable consideration before maturity. Act 64 of 1904, Section 59. Appalachian Corporation vs. Ayo, 145 La. 201, 82 So. 89; Parks vs. Hughes, 145 La. 221, 82 So. 202; Steeg vs. Codifer, 157 La. 299, 102 A. 407.

The actual notice required by Section 56 of the Act mentioned has been satisfied by the showing in this case. Mr. Stevens failed to carry the burden of proof incumbent on him, and therefore, has no more right to compel payment of the notes sued on, than the Brenard Manufacturing Company would have, and as heretofore stated, they have not that right.

The judgment appealed from, is therefore erroneous and contrary to the law and the evidence, and it is therefore ordered adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and the plaintiff's demand on said notes is now rejected at his costs in both Courts.

———

ON APPLICATION FOR REHEARING.

ELLIOTT, J. F. L. Stevens, plaintiff and appellee, alleges errors to his prejudice in the opinion herein rendered, assigning eleven in number, and supports same by brief.

In the first he alleges that we are in error in holding that his objections to testimony offered by defendant, are not urged in ·his brief, and that all objections on that account had been abandoned.

In the sixth it is said that we are in error in holding that the depositions of Messrs. Stevens and Record were taken and introduced by plaintiff; same having been introduced by defendant over his objection.

The language to which he refers in these two assignments is that, in which after stating the case, we say:

"Objections were urged on the trial to the admissibility of the contract signed by the defendant and the Brenard Mfg. Co., to which the notes were attached at the time they were signed. The contract in question is annexed to and made part of the testimony taken and introduced by the plaintiff. The objections are not urged in plaintiff's brief, and we take it that all objections on that account have been abandoned."

The record bears out the statement in the opinion, except that the contract was not introduced in evidence on the trial by the plaintiff; it was done by the defendant. But the statement in the opinion is correct in all other respects, and it was in fact offered in evidence by plaintiff, and that fact prompted the statement in the opinion. It occurred in this way:

The plaintiff Stevens acting by G. A. Kenderdine as his attorney, and the defendant Gaude, acting by W. R. Hart as his attorney, entered into a written agreement in the case a month or more before the trial, under which the testimony of the plaintiff Stevens and that of J. L. Record of the firm, Brenard Manufacturing Co., was taken by their mutual consent before I. M. H. Leuz, Notary Public, at Iowa City, Iowa, for the purpose of being used on the trial.

Mr. Stevens voluntarily appeared before the notary in Iowa City, and was examined in chief by Mr. Kenderdine, as his attorney, and was then cross-examined by Mr. Hart, as attorney for Mr. Gaude.

Mr. Record appeared before the notary public and was examined in the same way. Mr. Record on being examined in chief by Mr. Kenderdine, as attorney for Mr. Stevens, was asked:

"Q. Was the order to which you refer an oral or a written order?
"A. It was a printed order filled in and signed at Port Allen, Louisiana, on September 3, 1926.
"Q. Do you have that order in your possession?
"A. I do.
"Q. I now hand you this order marked Exhibit 1, and ask you if you know what it is?
"A. I do, it is the order to which I referred." (Plaintiff offers Exhibit 1 in evidence.)

Exhibit 1 is the contract mentioned in the opinion. It was offered in evidence by the plaintiff, and as such was attached to the depositions, but when the same contract was subsequently offered in evidence by the defendant, the plaintiff, by his local counsel, objected.

The plaintiff could not object on the trial to what he had previously offered in evidence himself.

Plaintiff's brief in this Court mentions the contract, but contains no argument against the permission which the trial judge gave defendant to offer the contract in evidence and have it filed. We therefore thought the local objection had been abandoned, and so stated in the opinion. The argument advanced in plaintiff's brief is not about the contract, but has reference to the depositions of Messrs. Stevens and Record, and to the offering of same by defendant.

One of the grounds of alleged error is that the Court permitted the defendant to offer in evidence the depositions of Messrs. Stevens and Record which had been taken in Iowa City, previous to the trial, and have them filed. The objection he urged was as follows:

"Plaintiff objects to the offering of the above testimony on the grounds that defendant has failed to establish that the notes were not acquired by plaintiff after maturity. (The word 'not' inadvertently appears on the note of evidence.) And on the further grounds that he is attempting to establish fraud on the part of the plaintiff, without having alleged fraud on the part of the plaintiff in his petition."

Plaintiff contends that we did not rule on the above exception, and that it was urged in his brief. This contention is the eighth assignment of errors in his petition.

The argument in plaintiff's brief on this matter was not overlooked in this Court. It was given the same consideration as the other phases of the case. We noticed that the situation had been observed by the lower court in ruling. The right of the defendant to offer the depositions seemed so plain and the permission to do so by the

lower court seemed so incontestible, that it did not occur to us in writing the opinion that the ruling should be acted on, and either set aside or affirmed, before passing to the merits of the case.

We now see that it would have been better, and that we should have taken up the ruling and acted on it, since it was urged, but the plaintiff has been, in no way, prejudiced by the fact that it was not done.

The following is our appreciation of the facts concerning the matter. The depositions of Messrs. Stevens and Record were taken by the mutual consent of the plaintiff Stevens and the defendant Gaude in Iowa City, and in taking same, each side appeared by attorneys. The evident purpose of taking the depositions in the case, at the time and place, was to use the depositions on the trial of the case. The parties embodied in their agreement on the subject, the following clause at the bottom:

"And that neither side shall make objections to questions at the time of taking the depositions, but it is agreed that all objections may be made at the time of the trial by either side, just as though the witnesses were actually on the stand in open court and testifying in said cause."

The plaintiff could not, after giving his consent to the agreement and appearing voluntarily before the notary public and giving his answers to questions propounded by his attorney, and by the attorney for the defendant, as was done by Mr. Record, subsequently object by his local counsel to what he had done; that is, not on the grounds stated. He had the right, when the depositions were offered in the trial court, to point out any question or answer that he thought inadmissible, but he did not do that. His objection by local counsel was to the depositions of himself and

Mr. Record as a whole. He could not offer an objection of that kind. Under the agreement either side was given the right to offer the depositions and have them filed, and neither side had the right to object, except, to particular questions or answers or some particular matter of fact. As a result of plaintiff's consent, previously given, the offering by defendant was a mere formality which the lower court permitted because of plaintiff's consent, and as to which there was no ground for contest and nothing in the permission given, which in writing the opinion seemed to us worthy of remark or review.

If the opinion had acted on the objection, we would have merely said that the lower court properly permitted defendant to offer the depositions in evidence and have them filed, because of plaintiff's consent, previously given, that it be done. The plaintiff can not appeal from and have reviewed a matter to which he has consented. We therefore deem it useless to grant a rehearing for the purpose of formally acting on the ruling of the lower court permitting defendant to offer in evidence and have filed, the depositions of Messrs. Stevens and Record, taken in the way, and under the circumstances stated.

Plaintiff assigns as error number two, that this Court erred in holding that the notes sued on had never been negotiated and delivered to the plaintiff Stevens, defendant having admitted same through his attorney, and he cites page three of the note of testimony.

We did not consider in arriving at our conclusion that the defendant had made any such admission, although plaintiff in his brief contended and still contends in his application for rehearing, that defendant had abandoned his defense that plaintiff did not acquire the notes before ma-

turity. He complains that the opinion does not refer to nor act on defendant's admission.

The record shows on this subject, that when the defendant offered the depositions of Messrs. Stevens and Record in evidence, plaintiff, by his local attorneys, objected on the grounds heretofore stated: "That defendant has failed to establish that the notes were not acquired by plaintiff after maturity. (The word 'not' inadvertently appears on the note of evidence.) And on the further ground that he is attempting to establish fraud on the part of the plaintiff, without having alleged fraud, etc." Defendant's counsel answered the objection stating to the Court why he desired to offer the depositions in evidence, and saying:

"We prove by this testimony that Mr. Stevens is not a bona fide holder of these notes in due course. In other words we are trying to show bad faith. The evidence shows that in our pleadings I was wrong in saying that he had not acquired them before maturity." (See note of testimony, bottom of page 2 and top of page 3.)

The pleadings to which he referred was the answer he had written in which ·the defendant denied that plaintiff had acquired the notes before maturity, and in his saying: "I was wrong," he had reference to the fact that Messrs. Stevens and Record had both testified in their depositions that Mr. Stevens had acquired the notes before maturity, and the only thing to the contrary was a matter of inference, and presumption. The question he was urging to the Court shows that it was not his purpose to make a formal admission that plaintiff had, as a matter of fact, acquired the notes before maturity. ·The Court ruled that defendant could offer the depositions in evidence, and there is nothing in the ruling, nor in the note of evidence, indicating that an admission of the kind was intended. The plaitiff places a meaning and effect on the language mentioned which cannot be justly nor reasonably accepted.

Plaintiff's contention on this matter received our consideration. Our conclusion then and now, is indicated by our opinion on the merits of the case.·

Plaintiff urges in his brief for rehearing that defendant does not charge him with fraud, and that the averments in his answer do not justify the opinion rendered on the merits of the case.

The answer denies plaintiff's averments of good faith, that he gave valuable consideration for the notes and acquired them in due course, etc.

The answer alleges that plaintiff acquired them without consideration, in bad faith, and not in due course. That the defective title to said notes was obtained under circumstances amounting to fraud and breach of faith on the part of the Brenard Manufacturing Company, its agents and employees, and that plaintiff had notice of this defective title, and did not purchase the notes, etc.·

Defendant's allegations are sufficient for the purposes of the opinion rendered.

The plaintiff alleges in his petition for rehearing and supporting brief other errors, numbers, three, four, five, seven, nine, ten and eleven, but these contentions all come within the scope of the merits, and were taken into account, considered and disposed of in the decision on the merits.

We have given the case, and plaintiff's contentions, reconsideration, and our original opinion herein remains unchanged.

Rehearing refused.