JANVIER, Judge.
This is a suit on a promissory note for $1,200. The defense is that there has been a failure of consideration since the contemplated work for which the note was given has never been performed.
It is conceded that the work was not performed and that if the note were still owned by the contractor to whom it was given, there could be no recovery under it, but it is contended by the plaintiff who sues on the note that he is a third holder for value who obtained it before maturity and without knowledge of any of its possible infirmities.
There was judgment in the Civil District Court for the Parish of Orleans in favor of the holder of the note and the maker has appealed.
Since it is conceded that the consideration contemplated has never been received by the maker of the note, the only question *742 which confronts us is whether the plaintiff is a holder for value who obtained the note before maturity and who had no knowledge of the infirmities which might result from failure of consideration.
We thus commence our study of the question with an investigation of whether or not the Judge a quo was in error in holding that the burden rested upon defendant, the maker of the note, to prove that the plaintiff knew of the possible infirmities.
In his reasons for judgment, given in connection with the judgment for plaintiff, the District Judge, referring to the contention that the holder of the note had full knowledge of the infirmities which might result from failure of consideration, said :
“while some of the circumstances of this case look suspicious, still the defendant has failed to carry the burden of proof imposed upon him, *
Where a third holder of a note sues on it and the maker defends on the contention that there was a failure of consideration, the burden first rests upon the maker to show failure of consideration and when this is shown the burden shifts to the holder of the note to show that he obtained it without knowledge of the possible infirmities. As a result of this rule, where failure of consideration is conceded and the circumstances are “suspicious”, the burden rests even more heavily upon the holder of the note.
This rule results from our Negotiable Instruments Law for, under LSA-R.S. 7:52, it is provided that where a third holder sues on a note he is not a holder in due course unless he can show:
“That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.”
That it is settled that where failure of consideration is shown the burden shifts to the holder to show that he had no- knowledge of the possible infirmities is evidenced by a reading of the decisions of the Supreme Court in several cases. For instance, this was held very recently in Bernard Brothers v. Dugas, 229 La. 181, 85 So.2d 257, and much earlier, in Steeg v. Codifer, 157 La. 298, 102 So. 407, 409, the Supreme Court said:
“As between the maker and the payee of said notes it is clear, therefore, that the defense of fraudulent misrepresentation has been established. This being true the burden rests upon plaintiff to prove good faith and want of knowledge of such equities. Neg. Ins. Law § 59; Appalachian Corp. v. Ayo, 145 La. 201, 82 So. 89.”
In a situation very closely resembling that which is' now before us, Commercial Germania Trust & Savings Bank v. Southwestern Surety Ins. Co., 145 La. 367, 82 So. 373, 374, the Supreme Court held the maker of the note not liable to the holder who claimed to be a holder in due course for the reason that no consideration had been received by the maker since the note was issued conditionally, “the condition being that the Metropolitan Building Company was to erect certain buildings * * * which it failed to erect * * The Supreme Court said: “The note therefore never matured” and the Court added: “The consideration for or condition of the note was well known to the plaintiff * *
In the case at bar we state unequivocally that the record abundantly shows that the plaintiff well knew the condition and in fact the record indicates that the plaintiff was in all probability an interested party along with the contractor who agreed to do the work, and it further suggests that the real fact is that the plaintiff did not own the note but obtained it and negotiated it for the benefit of the contractor to whom it was given and who failed to perform the work contemplated.
Most of the facts are not in dispute. James Cornelius was a general contractor. The defendant, Ruben Washington, was the *743 owner of a building located at the corner of North Johnson and Reynes Streets, in New Orleans. Desiring certain remodeling, on October 21, 1954, he entered into a contract, which was signed by Cornelius as contractor, under which it was agreed that for the work he would pay to Cornelius a total sum of $9,400. The work did not progress satisfactorily' and, on December 22, 1954, under a supplemental contract Cornelius agreed to accept $1,200 for the finishing of the work and instead of paying the $1,200 cash it was agreed that Washington would give to Cornelius a $1,200 note, which is the note sued on. The note was signed by Washington, made payable to himself and endorsed by him. It was payable one year after date and bore interest at the rate of six per cent from its date.
It was further agreed that, on completion of the work which was contemplated by this contract of December 22nd, the note would be secured by a second mortgage on the property in question. The conference which resulted in this agreement and the execution of this note was held in the office of Mr. Milton H. Cohen who is the attorney for the plaintiff Foster and who, at that conference, was acting as the attorney for James Cornelius.
Foster was present at that conference and the record leaves no doubt at all that he knew the purpose of the conference and well knew that the note was given in advance in payment of the contemplated completion of the work. Foster says that Cornelius then needed money for his payrolls and therefore he, Foster, being financially unable to advance the money himself, on December 27, 1954, arranged with Rex Finance Company for the borrowing of $1,000 for which he executed his note for $1,200 and for which as security he pledged the note of Washington which Cornelius held. The $1,000 which was the net proceeds of this note of $1,200 was turned over to Cornelius to meet his payrolls. Later Foster paid the $1,200 note held by Rex Finance Company and that Company delivered to him the Washington note for $1,200.
One of the contentions of defendant Washington is that not only did Foster have full knowledge of the conditions surrounding the execution of the note of Washington, but that, as a matter of fact, Foster was actually a partner of Cornelius in the contracting business and was interested in this particular contract. His testimony at least suggests that he was interested with Cornelius. He says that when he took the Washington note to the Rex Finance Company and used it as security for the $1,200 note which he executed, “we figured on getting this money back in sixty days,” and he also says that when “he” (meaning Cornelius) did not get the money in sixty days, he, Foster, paid the note to the Rex Finance Company and thus obtained the ownership of the note sued on.
It is also shown that, while the work on the Washington building was in progress, Foster, on several occasions, visited the work. Furthermore Foster, apparently as contractor, accepted in writing the bids of Bilbe Sheet Metal Works for the carrying out of a subcontract on the building of Washington which bid was directed to Mr. Cornelius Foster. Of course, there is no such person as Cornelius Foster. Cornelius was a contractor and it is contended that Foster was his partner. Someone, in pencil, inserted between the name Cornelius and the name Foster the symbol indicating the word “and”.
The witness, Robert O. Long, testified that he was present when the original contract was signed and he says that “Foster told me that the reason he was there is that he was a partner with Cornelius in the transaction.”
Foster’s explanation of his reason for helping Cornelius to finance the payrolls and his reason for borrowing $1,000 for Cornelius and making himself liable to Rex Finance Company for $1,200 was that Cornelius was doing certain work for him on his hotel building and that, knowing *744 that Cornelius was in certain difficulties and having' difficulty in securing other contractors, he was anxious to have Cornelius satisfactorily complete the work for Washington so that he might satisfactorily complete the work which he was conducting for Foster.
We note here that Foster made himself liable to the Rex Finance Company for $1,200 at eight per cent and received only $1,000, although the note which Washington gave to Cornelius and which Foster says he bought from Cornelius, bore interest only at the rate of six per cent. Thus Foster would have us believe that he voluntarily sustained a loss on this transaction.
It developed that later there were further difficulties between Washington and Cornelius and that a conference was held in the office of Mr. Morris Redmann, an attorney, and at that conference a complete settlement of the entire controversy was agreed on. And there is no doubt at all that at that conference it was understood that the $1,20U note was to be returned to Washington.
While there is nothing to show that Foster was present at that conference, Cornelius was represented by Mr. Milton Cohen, his attorney, who was also the attorney for the present plaintiff, Foster, and who later brought this suit on his behalf. And while the record convinces us that it was understood that the note which is now sued on was to be returned to Washington, Mr. Cohen, who says that that meeting resulted in “a complete satisfaction between Ruben Washington and James Cornelius,” doesn’t “remember anything concerning the note.” The execution of that settlement agreement cannot be interpreted in any other way than as contemplating the return of that $1,200 note.
There is other evidence which convinces us that in all probability Foster was interested with Cornelius in this particular contract and which convinces us even more firmly that he was thoroughly familiar with the fact that the $1,200 note sued on was given in advance for work which was to be-done and which was never performed.
Our conclusion is that Foster was not a holder in due course under our negotiable instruments law since he knew of the conditions under which the note was issued which conditions, contemplated as the consideration for the contract, were never complied with.
The judgment appealed from is annulled, avoided and reversed and the suit of plaintiff is dismissed at his cost.
Reversed.