STEWART, J.
Lin this case, Sharon Ann Miles Ross Tolintino, et al., appeal the trial court’s judgment in favor of Longleaf Investments, L.L.C., declaring the quitclaim deeds at issue null, void and of no effect as to ownership. For the reasons explained more fully herein, we affirm the trial court’s judgment.
FACTS
Longleaf Investments, L.L.C. (hereafter referred to as “Longleaf’), filed a “Petition for Concursus and to Quiet Title” against Sharon Ann Miles Ross Tolintino (hereafter referred to as “Tolintino”); Alvin Williams (hereafter referred to as “Alvin”), Tolintino’s sometime chauffeur and longtime family friend; Yolanda Williams (hereafter referred to as ‘Yolanda”), Alvin’s daughter; Zishun Moore (hereafter referred to as “Zishun”), Alvin’s minor son; and First Tower Loan, Inc., a judgment creditor of Yolanda Williams. The action concerns immovable property in Bossier Parish identified as Sections 33 and 34, Township 17 North, Range 11 West and Sections 3 and 4, Township 16 North, and Range 11 West.
*159 Tolintino owned the property at issue. On December 6, 2005, Longleaf and Tolin-tino entered into a Purchase/Sell Agreement (hereafter referred to as the “Agreement”) with James Young, who is a managing member of Longleaf. Pursuant to the Agreement, Tolintino retained one-half of the minerals in Sections 33 and 34. Young paid Tolintino a $1,000.00 down payment on the property that day.
On January 17, 2006, prior to the Agreement being filed in the public records, Tolintino conveyed Section 3 via quitclaim deed (hereafter referred to as “Quitclaim # 1”) to Yolanda and Zishun for $1,800.00. Alvin signed on |aZishun’s behalf. Quitclaim # 1 was recorded in the Bossier Parish public records on January 24, 2006.
On February 22, 2006, Longleaf recorded the Agreement.
On May 12, 2006, Tolintino conveyed her interest in Sections 4, 33, and 34 via a quitclaim deed (hereafter referred to as “Quitclaim # 2”) to Zishun. Again, Alvin signed on Zishun’s behalf. Quitclaim #2 was recorded on June 7, 2006. It referenced the price of the property as $12,000.00. However, Tolintino testified that Quitclaim #2 should have recited a price of $1,200.00, and claimed to have received $1,200.00. Alvin testified that he paid $12,000.00 for the property, but provided no proof of such payment.
After Longleaf sued Tolintino for specific performance, she conveyed the property subject to the Agreement to Longleaf. Longleaf subsequently filed the instant action for a concursus and to quiet title to the property, specifically requesting that the quitclaim deeds be cancelled and “stricken from the record as clouds of the title.”
At the conclusion of trial, the defendants conceded that Quitclaim #2 was invalid, since it was recorded after the Agreement had been recorded. Although Quitclaim # 1 was recorded before the Agreement, the trial court rendered judgment nullifying both Quitclaim # 1 and # 2. Additionally, the trial court noted that the First Tower Loan judgment against Yolanda does not affect the property purchased by Longleaf. The trial court found Tolintino and Alvin conspired to defraud Longleaf of the property by confecting the quitclaim deeds for the sole purpose of allowing Tolintino to get out of the Agreement. It noted:
|sThe court finds the testimony of both Ms. Tolintino and Mr. Williams to be totally lacking in credibility. It is clear to the court that the two of them basically conspired to try to defraud plaintiff of the property that she agreed to sell him on December 6, 2005. Based on the totality of the evidence it would be unconscionable to permit the quitclaim deeds to stand.
In its written reasons for judgment, the trial court recognized that a third party purchaser who is guilty of fraud or bad faith is not protected by the public records doctrine.
Tolintino, Alvin, on behalf of Zishun, and Yolanda (collectively referred to as “Appellants”) have filed the instant appeal.
LAW AND DISCUSSION
The appellants’ sole assignment of error is that the trial court erred in denying them ownership interest in Section 3 of the property at issue, as conveyed in Quitclaim # 1. More specifically, they assert that the trial court erred in granting a judgment in favor of Longleaf declaring that Quitclaim # 1 was null, void, and of no effect as to ownership in the property at issue. The appellants believe that this judgment denies them full protection of the safeguards they are entitled to as third *160 parties pursuant to the public records doctrine.
The public records doctrine is generally set forth at La. C.C. art. 3338 et seq. Under this doctrine, a third person need only look to the public records to determine adverse claims. Carr v. Oak-tree Apartments, 45,514 (La.App. 2 Cir. 8/11/10), 46 So.3d 793, writ denied, 2010-2092 (La.11/12/10), 49 So.3d 896; Voelkel v. Harrison, 572 So.2d 724 (La.App. 4 Cir.1990), writ denied, 575 So.2d 391 (La.1991). The primary purpose of the public records doctrine is the protection of third persons from unrecorded interests. Cimarex Energy Co. v. Mauboules, 2009-1170 (La.4/9/10), 40 So.3d 931; Carr, supra. Because it does not create rights but rather denies the effect of certain rights unless they are recorded, the public records doctrine is referred to as a negative doctrine. Carr, supra. The public records doctrine provides that an instrument involving immovable property shall be effective against third persons only from the time it is filed for registry in the parish where the property is located. See La. C.C. art. 1839; La. C.C. art. 3338. Third persons are deemed to have constructive knowledge or notice of the existence and contents of recorded instruments affecting immovable property. Carr, supra.
A third party purchaser can rely on the public records so long as he does not participate in fraud. Owen v. Owen, 336 So.2d 782 (La.1976); Kinchen v. Kinchen, 244 So.2d 316 (La.App. 1 Cir.1970), writ not considered, 257 La. 854, 244 So.2d 608 (La.1970), 257 La. 854, 244 So.2d 608. The questions of fraud and bad faith are relevant generally to a determination of whether a third party purchaser is entitled to the protection afforded by the public records doctrine. Simmesport State Bank v. Roy, 614 So.2d 265 (La.App. 1 Cir.1993); American Legion v. Morel, 577 So.2d 346 (La.App. 2 Cir.1991), writ denied, 580 So.2d 924 (La.1991).
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. C.C. art. 1953. Fraud may also result from silence or inaction. Id. With regard to the standard of proof of fraud, La. C.C. art. 1957 provides that fraud need only be proven by a preponderance of the evidence, and that such proof also “may be established by circumstantial | ^evidence.” While fraud is never presumed, courts do recognize the cunning concealment in which it shrouds its devious practices and the difficulty of tracing it by direct proof. H.T. Simon-Gregory Dry-Goods Co. v. Newman, 50 La. Ann. 338, 23 So. 329 (La.1898). Circumstantial evidence, including highly suspicious facts and circumstances surrounding a transaction, may be considered in determining whether fraud has been committed. Williamson v. Haynes Best Western of Alexandria, 95-1725 (La.App. 4 Cir. 1/29/07), 688 So.2d 1201, writ denied, 97-1145 (La.6/20/97), 695 So.2d 1355.
When there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Rosell v. ESCO, 549 So.2d 840 (La.1989); Guillot v. Evans, 31,591 (La.App. 2 Cir. 2/26/99), 728 So.2d 1052, writ denied, 99-1178 (La.6/4/99), 744 So.2d 631. The fact finder’s choice between two conflicting, but permissible, views of the evidence cannot be manifestly erroneous. Stobert v. State, Through DOTD, 617 So.2d 880 (La.1993); Guillot, supra. In the instant case, the trial court stated in its opinion:
It should be noted that the petition filed by Longleaf does not contain the words “bad faith” or “fraud,” however, the ba *161 sic tenor of the allegations suggest that the quitclaim purchasers were in bad faith. Furthermore, the evidence and the testimony adduced at trial specifically dealt with the issues of fraud and bad faith.
We agree with the trial court’s determination. The record reveals numerous suspicious facts and circumstances surrounding Quitclaim # 1 and # 2 that are clear indications of bad faith and fraud. At trial, Tolintino recalled entering into the Agreement with Young. She also related that she had discussed the Agreement with Alvin, who she admitted was her friend. Tolintino testified that she signed Quitclaim # 1 and # 2 to “come out of the | (¡whole thing with Young.” Tolintino stated that she did not want to convey the property to Young, and attempted to talk to him in order to “get out of the contract.”
Conflicting with Tolintino’s testimony, Alvin denied having any knowledge of the Agreement until after he had purchased the property in question. He also stated that he tried to return Young’s $1,000.00 down payment. Alvin testified that he conducted a title search on the property that failed to produce a recordation from Longleaf Investment.
Young testified that approximately ten days after the parties entered the December 6, 2005, Agreement, Tolintino asked to rescind the contract. He agreed to do so when she returned the $1,000.00 deposit. The deposit was not returned until August 2006.
Although Alvin’s title search on the property failed to produce a recordation from Longleaf, the evidence indicates that he had knowledge of the Agreement and conspired with Tolintino to fraudulently convey the property through bogus quitclaim deeds. Tolintino even admitted that she had discussed the Agreement with her friend, Alvin. Additionally, Young testified that Alvin drove Tolintino to his office for discussions leading up to the Agreement.
Faced with conflicting evidence between Alvin, Tolintino, and Young, the trial court was called upon to make credibility determinations. In doing so, the trial court concluded that Tolintino, with Alvin’s help, attempted to convey the property via quitclaim deeds in order to avoid honoring the Agreement she made with Young. We find no error in the trial court’s finding that Alvin and Tolintino conspired to attempt to defraud Young, and that the quitclaim deeds were invalid. This assignment of error is without merit.
|7C0NCLUSI0N
Having found no error in the trial court’s judgment deeming the quitclaim deeds invalid, we affirm the trial court’s judgment. Costs of this appeal are assessed against the appellants.
AFFIRMED.