431 So.2d 899 (1983)
Joseph W. BARHAM, Plaintiff-Appellee,
v.
DEPARTMENT OF HIGHWAYS (a/k/a Transportation & Development Department, Division of Administration), Defendant-Appellant.
No. 15359-CA.
Court of Appeal of Louisiana, Second Circuit.
May 3, 1983.
Rehearing Denied June 8, 1983.
*900 William W. Irwin, Jr., Robert L. LeDoux, Bernard L. Malone, Jr., Bryan Miller, Baton Rouge, for defendant-appellant.
James W. Berry, Rayville, for plaintiff-appellee.
Before PRICE, HALL and MARVIN, JJ.
PRICE, Judge.
This is an appeal by the defendant of the judgment of the trial court fixing the common boundary between its property and the contiguous tract owned by plaintiff.
Plaintiff is owner of a tract of land on the southern boundary of Section 28, T 17 N, R 7 E. The state owns the parcel of land situated on the northern boundary of Section 33, T 17 N, R 7 E directly south of plaintiff's tract. It is undisputed that the ideal boundary between the two tracts is the section line between sections 28 and 33. The dispute which prompted the filing of this suit is the proper location of the section line.
The state erected a highway barn on its property soon after its acquisition in 1954 and placed a fence along what it contends to be the north boundary of Section 33, consistent with the location of the northwest corner of that section on the plat of a 1953 survey.
*901 Plaintiff filed this suit to compel fixing of the boundary, contending that the state's fence, being located north of the true section line, encroached on his property and requesting that the court appoint a surveyor to locate the line. The court appointed Registered Surveyor John Maroney who duly returned the plat of his survey and the process verbal thereof for homologation by the court. The state opposed the homologation and at trial of the matter presented the plat of a 1976 survey made for the state by Registered Surveyors Ken McKay and James Wheat, contending it showed the correct location of the section line.
The trial court approved the Maroney survey which placed the section line 284.6 feet south of the highway department's north fence line. Neither this survey nor the survey relied on by the state in opposing its approval was based on the location of established government corners.
After the first hearing, the state filed a motion to reopen the case so that newly discovered evidence could be presented. The motion was granted and a new plat was introduced into evidence by the state which it contended showed a reconstruction of the township by reference to an established government corner discovered in Section 5. The trial court found the evidence introduced in support of this reconstruction insufficient to prove the reliability of the location of its lines. Reaffirming its approval of the Maroney survey, the court then fixed the section line as per its location on the plat thereof.
Defendant appeals this judgment, contending for the first time on appeal that the trial court lacks subject matter jurisdiction in a boundary action involving lands owned by the state. It is argued in the alternative that the trial court erred in using the Maroney survey to fix the boundary in preference to the state's plat showing the location of an established government corner.
In support of its contention that the district court has no jurisdiction over the subject matter of this suit, the defendant relies on La.R.S. 41:1131-1136. These statutes provide a method for the fixing of the boundary between lands belonging to the state and contiguous lands belonging to another person by mutual consent. Section 1131 reads as follows:
Whenever there arises a controversy with respect to the boundary line between lands belonging to the state and contiguous and abutting lands belonging to another person, or boundary lines which have never been definitely ascertained, defined or fixed, the state and the party may proceed to the ascertainment, determination and fixing of the boundary by mutual consent, as set forth in this Chapter. (Emphasis added)
It was stated in the introduction of the statute when passed by the Louisiana Legislature as Act No. 332 of the regular session of 1938 that the purpose of this act was to provide an additional method of procedure for determining boundaries between lands belonging to the state and contiguous or abutting landowners.
The state argues that the mandatory language in La.R.S. 41:1133, providing that if an amicable agreement cannot be arrived at as set forth in Section 1132, the differences in question shall be submitted to a specified group of commissioners, removes from the district court the power to adjudicate such a matter. However, in light of the language of Section 1131 and the above-mentioned comment which is indicative of the legislative intent behind this enactment, it is this court's view that the parties are not required to follow the cited procedure. The statute merely provides an alternative to the institution of court proceedings to settle such controversies. The language of the act as a whole indicates that the provisions of Section 1133 come into play only if the parties have first mutually agreed to settle their boundary dispute according to the prescribed procedure, but cannot reach a satisfactory agreement on their own. There was no agreement to fix the boundary by mutual consent in the instant case.
Therefore, inasmuch as we are of the view that La.R.S. 41:1131-1136 does not divest the district court of original jurisdiction of boundary actions in which the state *902 is a defendant, and there was no agreement between the parties to fix the boundary according to the statutory provisions, we find no merit in defendant's plea of lack of subject matter jurisdiction. See La.Const. of 1974, Article 5, Section 16(A).
Defendant further maintains the trial court failed to apply the proper legal criteria to its determination of the respective reliability of the opposing surveys and plats in fixing the boundary. The following general principles of surveying for purposes of resolving boundary disputes were stated by this court in Horneman v. Giles, 381 So.2d 892 (La.App.2d Cir.1980), writ. denied 385 So.2d 268 (La.1980):
... In establishing a disputed boundary along a section line, it is the surveyor's duty to reproduce the lines of the original government survey as originally run, as closely and accurately as possible. Smith v. Almond, 157 La. 265, 102 So. 330 (1924); Bodcaw Company v. Spurlin, 341 So.2d 1266 (La.App. 2d Cir.1977). If an established corner or monument can be found within the township, then that corner should be used as a starting point. Fournet Land Co. v. Martin Fish Co., 184 La. 537, 166 So. 666 (1936). See also LSA-R.S. 50:125 and 50:154. Id., at 893.
The state maintains that the plat introduced at the second hearing was begun from an established government corner. It is conceded that no government corner was located as a reference point for the Maroney survey. Defendant argues that its plat is therefore more reliable and the boundary should have been fixed accordingly. We do not agree.
First, we are not satisfied that the defendant has shown with the requisite degree of certainty that the corner it relies upon is indeed an original government corner. The original marker of the southeast corner of Section 5 which the state contends it has located has long since disappeared. What the state's surveyor found was an iron post which he identified as having been set in a previous survey by a well-respected surveyor named Selman, now deceased, retracing the old government survey. However, there was no evidence to show that the iron marker found was in fact the post set by Selman at the location of the witness tree which originally marked the corner in question.
Second, even if this point was established to be an original government corner, the plat developed by the state with reference to that point was a mere mathematical reconstruction of part of the township by the state surveyor in accordance with the distance calls of the old government survey. No markers were located on the ground to verify the location of the lines as drawn on the plat by the state's surveyor. It is well settled that if the original corners and lines have been obliterated, natural objects and monuments should be followed in identifying prior surveys. The general rule is that calls for natural or permanent objects in an entry, survey, or conveyance will control other and conflicting calls. Such calls are thus considered more important than courses and distances in ascertaining the location of disputed lines. See Barrataria Land Co. v. Louisiana Meadows Co., 146 La. 999, 84 So. 334 (1920); City of New Orleans v. Joseph Rathborne Land Co., 209 La. 93, 24 So.2d 275 (1945); Cheramie v. Vegas, 194 So.2d 189 (La.App. 1st Cir.1966), writ. denied 250 La. 907, 199 So.2d 918 (La.1967). Therefore, the reliability of a plat which is unsupported by any effort to retrace the lines on the ground is questionable at best.
The Maroney survey was based on accepted corners on the ground located by using the plats of three previous surveys. No original government corners could be found in the area surrounding the properties of the parties. Mr. Maroney and his party chief testified they therefore tried to find every marking on the ground in that area which had been used in other surveys and accepted in the community as established corners. It was also testified that the variances between distance calls of the surveys used to establish reference points and the markers found on the ground were very slight.
*903 No marker was found to verify the location of the southwest corner of Section 33, but the section corners on either side of this point were located so that the surveyor was able to reconstruct the lost corner by the double proportionate method of surveying. In applying this method of locating lost corners, any difference between the actual measurement and the distance calls of the original government plat is allocated equally between the two sections located between the outer corners. This is the method preferred by the General Land Office of the United States Department of the Interior as shown by its handbook on Reconstruction of Lost or Obliterated Corners. Each step undertaken in locating each point designated in the Maroney survey is precisely listed in a document designated by Mr. Maroney as a proces verbal. This document was returned with the survey and entered into the record to further support the accuracy of the court-ordered survey, although the formal proces verbal is no longer required. See La.C.C.P. Art. 3692; Roy v. Rasbury, 425 So.2d 1284 (La.App.2d Cir. 1983).
Defendant argues that the trial court erred in accepting the survey by the court-appointed surveyor because it was not begun from an established government corner. As stated above, it has not been satisfactorily proven that there exists an original government corner in the township in question. Furthermore, a survey made by a court-appointed surveyor is presumed to be correct unless rebutted by the opposition. Bodcaw Co. v. Spurlin, 341 So.2d 1266 (La. App.2d Cir.1977), writ denied 344 So.2d 381 (La.1977). Where there is opposing testimony from other surveyors and differing opinions among the experts, the court's decision must be based on what it considers the preponderance of the evidence. Holt v. Morgan, 344 So.2d 84 (La.App.2d Cir.1977). The reliability of the section line established by the Maroney survey was borne out by the markers located on the ground in the area. These were established to be corners of long-standing recognition which correlated almost precisely with prior surveys of the area. The trial court found that defendant's plat showing its location of the line with reference to the corner located in Section 5 was insufficient to rebut the presumed accuracy of the Maroney survey. All the surveyors testified that original government surveys are seldom accurate in their distance calls of one square mile per section because the measuring tools used at that time were much less accurate than those available today. Yet the defendant's location of the boundary was based on a calculation of exactly 5280 feet per section. Furthermore, no physical markings were located to tie the state's plat in with the actual conditions on the ground.
As stated by this court in Smith v. Scarpengos, 56 So.2d 757 (La.App.2d Cir. 1952), a survey predicated on sound surveying principles and procedures, as was the Maroney survey should be accepted unless the record shows it is incorrect. Furthermore, the determination of a disputed boundary is a question of fact which should not be disturbed on appeal in the absence of manifest error. See McCullin v. Sumners, 401 So.2d 458 (La.App.2d Cir.1981), writ denied 406 So.2d 610 (La.1981); Leblanc v. Laborde, 368 So.2d 1126 (La.App.2d Cir. 1979), writ denied 369 So.2d 1377 (La.1979).
In the instant case, there were no clearly identifiable government markers within a reasonable distance of the disputed line, the state's plat was not verified by markings on the ground, and the Maroney survey was tied in meticulously to well recognized corners found on the ground. Under these circumstances, we find the judgment of the trial court fixing the boundary in accordance with the Maroney survey amply supported by the record.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against defendant-appellant.
AFFIRMED.