520 So.2d 1219 (1988)
Thomas B. SELLERS, III
v.
Kathy BARTHELEMY, Clerk of the Town of Grand Isle.
No. 87-CA-626.
Court of Appeal of Louisiana, Fifth Circuit.
February 8, 1988.
*1220 Nel F. Vezina, Vezina and Associates, Gretna, for defendant-appellants Rolley J. Collins and China Town, Inc.
David Pick, Greenberg & Dallam, Gretna, for Plaintiff-Appellee, Thomas B. Sellers, III.
Before BOWES, GAUDIN and DUFRESNE, JJ.
BOWES, Judge.
Defendants Rolley J. Collins (Collins) and China Town, Inc. appeal a judgment of the district court fixing a boundary between the Collins property and the property of the plaintiff Thomas B. Sellers, III (Sellers). Sellers answered the appeal, asserting that damages and attorney's fees are due to him and were erroneously denied by the trial court. We revise the judgment of the district court to grant attorney's fees and, as revised, affirm it. Sellers also asks for damages for a frivolous appeal, which we reject.
The district judge, in very well written reasons for judgment, gave the procedural facts as follows, which we quote and adopt:
This case was tried before the court on March 14, 1985, March 14, 1986, and completed on May 9, 1986. This matter originally instituted by the plaintiff, Thomas B. Sellers, III, as a mandamus suit against the Clerk of the Town of Grand Isle, seeking to compel the Town of *1221 Grand Isle to issue to him a building permit for the construction of a fence. Plaintiff originally applied for and was granted a building permit for the construction of a fence and, in fact, built the fence. However, while the fence was being constructed, it was destroyed.
As a result, the Town of Grand Isle refused to reissue the building permit, due to an apparent conflict over the true location of the boundary line between the property owned by Mr. Sellers and the property owned by the defendants herein, Rolley J. Collins and China Town, Inc.
On January 9, 1985, the defendants herein, Rolley J. Collins and China Town, Inc., filed a Petition for Injunction herein, praying for a temporary restraining order and preliminary injunction to issue against the defendant, Thomas B. Sellers, III, to prohibit him from constructing a fence along this disputed boundary line. A temporary restraining order was granted by the court on January 9, 1985, prohibiting the construction of the said fence.
Mr. Sellers filed an Answer and Reconventional Demand to this Petition for Injunction, praying for judicial determination of the boundary between the Sellers property and the Collins property. In addition, Mr. Sellers prayed for damages for the destruction of the fence, and for reasonable costs and attorney's fees for the dissolution of the temporary restraining order which had previously been issued in this matter.
Trial in this matter was had upon the Petition for Injunction and the Reconventional Demand on the dates set forth hereinabove.
It should additionally be noted that the temporary restraining order was extended seven times between January 16 and March 11, 1985.
Following trial, the court fixed the boundary between the Sellers and the Collins property as per the survey of Rolland P. Bernard, which it annexed to the judgment paraphed "Ne Varietur" for identification. Sellers was denied damages and attorney fees, but the Court ordered Collins and China Town, Inc. to pay court costs and expert fees.
On appeal, Collins generally avers that the trial court erred in finding sufficient proof of possession and title by Sellers; in turn, Sellers urges that the trial court erroneously denied damages and attorney fees for wrongful issuance of an injunction.
Appellant Collins has urged, as a separate specification of error, that he was unfairly prejudiced by the testimony and exhibits of two surveyors, Rolland Bernard and Sam Landry, claiming that such evidence was inadmissible pursuant to the statutory sanctions for nondiscovery, specifically Louisiana Code of Civil Procedure Art. 1428.[1] Collins alleges that these witnesses were a complete surprise to him and "were not provided as required." The record discloses no attempted discovery by appellant, by interrogatories or otherwise, referred to in C.C.P. 1428. Appellant admitted at trial he had filed no such interrogatories. The duty to supplement a response is therefore inapplicable in the present case, as is the jurisprudential sanction of refusing to allow evidence offered without proper supplementation (see Files v. State, DOTD, 484 So.2d 746 [La.App. 4 Cir.1986]). Accordingly, we hold that the trial judge did not err in admitting the evidence of Messrs. Landry and Bernard, and, therefore, this assignment of error is without merit.

BOUNDARY
Turning to substantive issues, Louisiana Civil Code Articles 784-796 contain the *1222 law on boundaries. Article 792 states that the court shall fix the boundary according to the ownership of the parties; if neither party proves ownership, the boundary shall be fixed according to limits established by possession. Article 793 states that the boundary shall be fixed by titles when both parties rely on titles only. Article 794 provides for fixing a boundary by 30 years acquisitive prescription, rather than titles, when a party and his ancestors in title have possessed within visible bounds, without interruption, more land than his title conveys.
"Ownership referred to in C.C. Art. 792 must be proven by one who claims such ownership of an immovable, by proving that he has acquired from a previous owner, or by acquisitive prescription." C.C. Art. 531. In Whitley v. Texaco, Inc., 434 So.2d 96 (La.App. 5 Cir.1983), this court held that Article 531 has not changed the rule of Pure Oil Company v. Skinner, 294 So.2d 797 (La.1974); i.e., that such proof of ownership required the plaintiff "to show title good against the world without regard to the title of the party in possession." At trial, Sellers introduced certified copies of the acquisitions preceding and including his, on the property in question, all the way back to copies of the letters patent issued by the State of Louisiana to Sellers' predecessors in title. The trial court thoroughly discussed the evidence presented by Sellers as to the title boundary line and concluded:
Plaintiff introduced into evidence a certified copy of his acquisition, dated November 11, 1981. In that act, plaintiff acquired the property from his aunt, Emma Mae Sellers Clesi, who testified in court. Plaintiff also introduced into evidence certified copies of his chain of title going back to the original acquisition by plaintiff's father, Thomas B. Sellers, Jr. Mr. Thomas B. Sellers, Jr., acquired the entire three hundred and seventeen (317) foot tract by virtue of five (5) different acts of sale which took place between the period of time from March 28, 1934, through July 26, 1938. Mr. Sellers' father also testified in court as to his acquisition of this property, and as to the location and size of the property acquired by these acts of sale. The court further notes that all of the acts of sale by which Thomas B. Sellers, Jr., acquired the above-mentioned property, described the property in terms of a survey conducted by H.E. Landry, Surveyor, dated July, 1933, which appears in the record of this case as an exhibit.
The court notes that Mr. Sellers testified that a fence was constructed along the property line as shown on the 1933 Landry survey, some time prior to 1940. The court also notes that remnants of this fence apparently still exist, and have been shown consistently on several of the surveys submitted to this court in connection with this litigation, including the very recent survey prepared by the office of Rolland P. Bernard, dated January 14, 1986. Mr. Bernard testified before this court that in conducting this survey, it appeared that the northernmost boundary of the Sellers property as he found it, coincided with the boundaries as set forth in the 1933 Landry survey.
Additionally, Mr. Sam Landry, who was the son of H.E. Landry who conducted the 1933 survey, also appeared as an expert surveyor in this case. Mr. Landry testified that he had conducted a survey in June of 1974, and that the boundaries of the 1974 survey likewise coincided with the boundaries of the 1933 survey which had been conducted by his father.
In addition, the court recalls that Mr. Thomas B. Sellers, Jr., the plaintiff's father, testified that when he first took title to this property in the 1930's, he surveyed it himself, to check the measurements and boundaries in the property descriptions contained in his deeds. Mr. Sellers testified that he had been a surveyor with the Army Corps of Engineers, and that he was knowledgeable in the field of surveying.
The court also notes that Mr. Carmen Picciola, another expert surveyor, was called as an expert witness by Mr. Collins in this matter. Mr. Picciola did not conduct a survey of the property, and the court notes further that Mr. Picciola was *1223 unable to tell the court where he felt the northernmost boundary of the Sellers property (and thus the southern boundary of the Collins property) might be located.
. . . . .
Likewise, the Court finds convincing, the fact that all of the surveys of the property in question, going back to 1933, have consistently located the title boundary line along the same line set forth in the 1933 survey of H.E. Landry, by which Mr. Sellers' father originally acquired the property in the 1930's. Therefore, the Court will rule that Mr. Sellers has adequately established the title boundary line of the northernmost boundary of Lot "F", in accordance with the survey of Rolland P. Bernard, which has already been entered into evidence in this proceeding.
We agree with the learned trial judge and also find that Sellers proved his title to the property in question, and, at the same time, the title boundary line, in accordance with the statutory and jurisprudential requirements.
Defendant attempted to discredit surveys made by plaintiff's expert as inadequate, stating that the 1933 Landry survey did not commence from a reliably-established point, and that no surveyor looked beyond the 1933 survey. Therefore, defendant contends the surveys relied upon by the trial court have no evidentiary value. We do not agree.
We find in the record that Samuel Landry, son of H.E. Landry, testified that he, personally, researched courthouse records, legal descriptions, maps, and other pertinent items. He stated that he physically surveyed the property, measured distances between fences and properties, located monuments, "and came in to determine where the different properties were and that's how I came from this concrete monument right here which my father said was set in 1929." The reference to the monument was also contained in H.E. Landry's field notes made at the time of the survey. Landry also reestablished other marks, such as old power lines, contained in the 1933 survey and further remnants of an old street.
Later, there was testimony from Mr. Bernard that the subdivision in question was never tied into a government point; there was also testimony that government monuments are not referable in determining property lines in the Grand Isle area, and that it was not a common practice to use these monuments for property lines in that area. Mr. Bernard reestablished the Landry surveys by his own physical survey and by using old maps, utilizing the same markersi.e., power line poles, the old street, and the old fence posts.
Mr. Picciola, defendant's expert, who did not completely survey or prepare a map of the property in question, stated that he could find no errors on the 1933 Landry survey as it exists "on paper and as it exists in the field". While Picciola testified that surveying property contiguous to the land in question indicated an overlap of 54 feet (Picciola surveyed the area from northeast to southwest, whereas the other surveys began from the southwest), Picciola did not tie in to any government monuments or markers. In Barham v. Department of Highways, 431 So.2d 899 (La.App. 2 Cir.1983), the court found that a survey predicated on sound surveying principles and procedures should be accepted unless the record shows it is incorrect. See also Smith v. Scarpengos, 56 So.2d 757 (La. App. 2 Cir.1952). In Barham, the accepted survey was based on accepted corners on the ground located by using plats of three previous surveys and the Court commented:
No original government corners could be found in the area surrounding the properties of the parties. Mr. Maroney and his party chief testified they therefore tried to find every marking on the ground in that area which had been used in other surveys and accepted in the community as established corners.
The court also stated:
Defendant argues that the trial court erred in accepting the survey by the court-appointed surveyor because it was not begun from an established government *1224 corner. As stated above, it has not been satisfactorily proven that there exists an original government corner in the township in question.
. . . . .
Where there is opposing testimony from other surveyors and differing opinions among the experts, the court's decision must be based on what it considers the preponderance of the evidence. Holt v. Morgan, 344 So.2d 84 (La.App. 2d Cir. 1977). The reliability of the section line established by the Maroney survey was borne out by the markers located on the ground in the area. These were established to be corners of long-standing recognition which correlated almost precisely with prior surveys of the area.
. . . . .
In the instant case, there were no clearly identifiable government markers within a reasonable distance of the disputed line, the state's plat was not verified by markings on the ground, and the Maroney survey was tied in meticulously to well recognized corners found on the ground. Under these circumstances, we find the judgment of the trial court fixing the boundary in accordance with the Maroney survey amply supported by the record.
We find Barham substantially similar to the present case. Accordingly, as the court did there, we find here that the trial court's acceptance of the Bernard survey (which reestablished the accuracy of the two former Landry surveys) as the preponderance of the evidence to be the correct decision, as was the fixing of the boundary in accordance with that survey. His ruling and reasoning are amply supported by the record.
We note that Collins produced no evidence of his title whatsoever. However, under C.C. Article 794,[2] Collins may have prevailed even in the face of Sellers' title had he (Collins) pleaded and proven the facts necessary for acquisitive prescription. The laws governing acquisitive prescription are contained in Civil Code Articles 3473 3484. Pertinent to our inquiry are the following:
Art. 3473. Prescription of ten years
Ownership and other real rights in immovables may be acquired by the prescription of ten years.
Art. 3475. Requisites
The requisites for the acquisitive prescription of ten years are: possession of ten years, good faith, just title, and a thing susceptible of acquisition by prescription.
Art. 3476. Attributes of possession
The possessor must have corporeal possession, or civil possession preceded by corporeal possession, to acquire a thing by prescription.
The possession must be continuous, uninterrupted, peaceable, public, and unequivocal.
Art. 3480. Good faith
For purposes of acquisitive prescription, a possessor is in good faith when he reasonably believes, in light of objective considerations, that he is owner of the thing he possesses.
Art. 3483. Just title
A just title is a juridical act, such as a sale, exchange, or donation, sufficient to transfer ownership or another real right. The act must be written, valid in form, and filed for registry in the conveyance records of the parish in which the immovable is situated.
The evidence delineated above demonstrates that Sellers satisfied the requirements of just title and good faith. The conveyances preceding and including Sellers' acquisition are in accordance with Art. 3483; Collins does not dispute this, nor the fact that such chain of title gave Sellers the "reasonable belief" that he owned the property.
*1225 Relative to the requirement of possession, under Art. 3476, it appears from the record that the property line was never in dispute until plaintiff attempted to erect the fence in 1983. We find that Sellers' possession from the acquisitions in 1934-38 was continuous, uninterrupted, peaceable, public, and unequivocal, for a minimum of a ten year period (at least through 1965, when Hurricane Betsy destroyed the Sellers' camp and what was left of the old fence, except the posts).
Further, the law is clear that when a possessor has a title, his exercise of possession over part of the property constitutes the exercise of constructive possession of the whole. Chaney v. State Mineral Bd., 444 So.2d 105 (La.1983); City of New Orleans v. New Orleans Canal, Inc., 412 So.2d 975 (La.1982). In Whitley v. Texaco, Inc., 434 So.2d 96 (La.App. 5 Cir.1983), this Court stated:
One who holds a deed translative of title is presumed to possess to the full extent of his title by any act of possession upon his land. Winjum v. Duplantis, 393 So.2d 405 (La.App. 1 Cir.1980). One who possesses property in good faith under a deed translative of ownership is considered to possess to the extent of his title, provided he has corporeally possessed part of the property described in the deed. In such a case, that person is considered to be in constructive possession of the entire tract. Pitre v. Tenneco Oil Company, 385 So.2d 840 (La.App. 1 Cir.1980), writ denied 392 So. 2d 678.
The fact that Sellers exercised acts of corporeal possession on this land is clear beyond dispute. As the trial court correctly found:
Mr. Sellers testified that a fence was built along the property line at some time prior to 1940, and it would appear from the testimony of the witnesses and the survey conducted by Rolland P. Bernard in January of 1986, that remnants of this fence still lie along the property line at this time. Mr. Sellers' father, Thomas Sellers, Jr., testified as to the various acts of possession of the Sellers family over the years, including the fact that the Sellers family consistently cut the grass, and, further, that they built a camp on the property. Additionally, the Sellers family apparently constructed a road on the property and, at the present time, the plaintiff herein, Thomas B. Sellers, III, has maintained a trailer on the property.
Additionally, it appears that from time to time since the property was acquired by the Sellers family that the Frazier family was placed on the property by the Sellers family, to maintain the property. Mr. Randolph Frazier testified to this fact in court.
Therefore, we find that Sellers exercised the corporeal possession sufficient to constitute constructive possession under the applicable law.
However, "... constructive possession by one party cannot defeat the adverse corporeal possession by another for a sufficient period of time to establish prescriptive title." Whitley, supra.
While Sellers pleaded both legal title and prescription by possession, Collins did not plead nor prove his adverse corporeal possession of the disputed tract. Rather, he introduced evidence and testimony in an attempt to disprove Sellers' possession. We note that Civil Code Article 3452 requires that prescription must be pleaded and cannot be supplied by the courts. Therefore, the trial court was, and this court is, precluded from considering whether Collins has acquired the property by prescription. Aymond v. Smith, 476 So.2d 1081 (La.App. 3 Cir.1985).
Furthermore, we find that Sellers proved that Collins did not corporeally possess the property. Some of the witnesses for Collins disputed the location of the old camps of both parties, with Collins stating their camp was on the boundary line adversus the testimony of Sellers to the opposite effect. Some of Collins' witnesses were not aware of the existence of the old fence posts, and said the fence was not necessarily considered the boundary fence. Some of Collins' witnesses disputed Sellers' claim *1226 that Sellers had cut the grass in the area. The trial court obviously felt that the Sellers' witnesses were more credible in this regard. The cases are legion which hold that where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact by the trial court should not be disturbed. Canter v. Koehring, 283 So.2d 716 (La.1973). We find there is no doubt that there exists a reasonable factual basis for the trial court's conclusions and decline to disturb them upon review.
Considering the applicable law and jurisprudence under the facts of the instant case, we find no manifest error in the trial court's determination that the boundary line between plaintiff's and defendant's property is in accordance with the Bernard survey. Sellers proved both title and possession to that boundary line.
The Landry survey relied on by the trial court to fix the boundary includes property on the other side (the Bay Honore side) of Highway One. Collins submits that Sellers did not present evidence of title or possession of this portion of the property and therefore plaintiff abandoned his claim as to this portion. We disagree. The property descriptions in the title conveyances all describe the property as existing from Bay Caminada to Bay Honore. The 1933 Landry survey includes the property on the other side of that highway to Bay Honore, as does the 1973 survey by Samuel Landry reestablishing the 1933 document. When the trial court fixed the boundary as per the Bernard survey, there was nothing to indicate that the Bay Honore side of the property was not included in the judgment, and we can find no support for defendant's position that Sellers abandoned this portion of the claim. We think it clear that, when the court fixed the boundary, it included the property on the Bay Honore side of Highway One.

DAMAGES
Sellers requests damages and attorney fees for wrongful issuance of the original temporary restraining order. Louisiana C.C.P. Art. 3608 permits the court to award such damages and attorney fees for the wrongful issuance of a temporary restraining order.[3] The record does not support an award for any specific damages in the present case. However, Sellers did introduce at trial evidence of attorney fees paid to counsel, only in connection with the injunction phase of the case, in the amount of $1,548.22, which sum included court costs. Sellers had twice filed a motion to dissolve the restraining order, which had been extended several times.
Collins did not plead or attempt to prove that he had acquired the property by adverse possession, as discussed infra. While he alleged title, he did not introduce even one document to prove title. In short, he did not attempt to prove his ownership of the property so as to justify the allegations made in his petition for injunctionthat is, that Sellers was a trespasser. With regard to the interpretation of C.C.P. 3608, we agree with the views expressed by the 3rd Circuit in Roy v. Union Bank, 347 So.2d 286 (La.App. 3 Cir.1977):
"the word `wrongful' does not necessarily connote bad faith or connivance, but it does impart the infringement of some right. The use of the injunctive process is an extreme remedy and its improper issuance causes the mover to stand the responsibility therefor."
Under the circumstances of this case, we find that the temporary restraining order was wrongfully issued within the meaning of C.C.P. 3608, and that Sellers proved that attorney fees were incurred in connection with the dissolution of the restraining order. Therefore, we find that the trial judge erred in not awarding Sellers *1227 the fees which he proved were incurred, and we revise that portion of the trial court's judgment. However, we decline to award the additional attorney fees requested by Sellers for "additional work done in connection with the injunction phase of this case, or this appeal." Such an award does not come under the auspices of C.C.P. 3608, and we do not find other grounds for such award of additional fees.

FRIVOLOUS APPEAL
Sellers has asked this court to award him damages for a frivolous appeal, claiming that appellant's sole aim in taking this appeal was to delay a resolution of the issues. The contention was based partly on the fact that, at the time appellee's brief was written, he had not received appellant's brief and averred that such had not been filed. Other allegations by appellee in regard to a frivolous appeal relate to actions in the district court and are not pertinent to the present question.
Damages for frivolous appeal are awarded under LSAC.C.P. Art. 2164[4] only when it clearly appears that the appeal was taken solely for the purpose of delay or that counsel for the appellant does not seriously believe in his legal position. Fouchi v. Fouchi, 442 So.2d 506 (La.App. 5 Cir.1983). We find that appellant's brief, though late, presented a debatable argument on his behalf, and raised valid legal questions. Therefore, damages for a frivolous appeal are inapplicable and will be denied.
For the foregoing reasons, the judgment appealed from is revised to award attorney's fees to appellee in the amount of $1,548.22, as proven, and as revised, is affirmed. Costs are taxed to appellants.
AFFIRMED IN PART, REVISED IN PART AND RENDERED.
NOTES
[1] LSA-C.C.P. Art. 1428 reads in pertinent part:

Art. 1428. Supplementation of responses
A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to the identity and location of persons having knowledge of discoverable matters, and the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.
[2] Art. 794. Determination of ownership according to prescription

When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds.
[3] Art. 3608. Damages for wrongful issuance of temporary restraining order or preliminary injunction

The court may allow damages for the wrongful issuance of a temporary restraining order or preliminary injunction on a motion to dissolve or on a reconventional demand. Attorney's fees for the services rendered in connection with the dissolution of a restraining order or preliminary injunction may be included as an element of damages whether the restraining order or preliminary injunction is dissolved on motion or after trial on the merits.
[4] LSA C.C.. Art. 2164 reads:

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.