667 So.2d 581 (1996)
Henry Ford FALLIN and Bette Jo Roane Fallin, Appellants,
v.
Leon PESNELL and Annie Lou Pesnell, Appellees.
No. 27814-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1996.
Rehearing Denied February 22, 1996.
*582 Napper, Waltman, Madden & Roger by Thomas W. Rogers, Ruston, for appellants.
Bobby L. Culpepper, Jonesboro, for appellees.
Before MARVIN, SEXTON and GASKINS, JJ.
GASKINS, Judge.
In this petitory/boundary action, Henry Ford Fallin and Bette Jo Roane Fallin appeal from an adverse judgment which set the boundary between their property and that of their neighbors, Leon Pesnell and Annie Lou Pesnell, along an old fence line. For the reasons assigned below, we reverse the judgment of the trial court.

FACTS
The Fallins are the record owners of the West ½ of the SE¼ and the SW¼ of the NE¼ of Section 3, Township 17 North, Range 2 West, in Jackson Parish. They acquired the land in two tracts in 1989 and 1990.
The Pesnells are the record owners of the East½ of the SE¼ and the South 5 acres of the 15 acres of the S½ of the SE¼ of the NE¼ of Section 3, Township 17 North, Range 2 West, in Jackson Parish. They acquired this land from the Simpson family in 1970.
The Pesnells' tract lies contiguous to the east side of the Fallins' property. Thus, the central issue here is the determination of the common boundary between their respective tracts of land, i.e., the eastern boundary of the Fallin property and the western boundary of the Pesnell land. In dispute is a 6.06 acre tract of land.
In May 1991, the Pesnells commissioned a survey by Albert D. Hulett, Jr., to establish the boundary line. Their neighbors, the Fallins, were pleased with the survey results, marked the line established by Mr. Hulett with silver paint, and posted it against trespassers. Shortly thereafter, the Pesnells filed a possessory action under LSA-C.C.P. Art. 3655. The trial court ruled in favor of the Pesnells and recognized their right to the possession of the disputed tract. Pursuant to LSA-C.C.P. Art. 3662, Fallin was ordered to assert any adverse claim of ownership in a petitory action within 60 days.
The Fallins then filed the present petitory/boundary action, contending that the boundary line is the one established in Mr. Hulett's survey. The Pesnells maintain that the boundary is the line shown on a possession survey by William T. Lowe which follows the remnants of an old fence line and is west of the boundary set by Mr. Hulett.
In its written opinion, the trial court found that the Fallins carried their burden of proving record title in the petitory action. The trial court then was required to establish the proper boundary line between the tracts. It relied upon the testimony of Leon Pesnell, his son James Pesnell, and Perry Simpson, the previous owner who sold the property to the Pesnells, to conclude that the boundary between the property was established by the old fence line shown in Pesnell Exhibit # 1, Mr. Lowe's possession survey. Judgment was rendered in favor of the Pesnells.
The Fallins' motion for new trial was denied. In its oral reasons for denying the motion for new trial, the trial court stated that neither Mr. Hulett or Mr. Lowe, the *583 Pesnells' surveyor, had based his survey upon commencement from an "established documented recognized governmental survey point." Because of this failure, the trial court found that it could not rely on either to establish the boundary line. Therefore, the court considered the evidence of possession to the old fence line to be determinative.
The Fallins appealed. They contended that the trial court erred in two respects: (1) apparently finding that the Pesnells had established 30-year adverse possession, and (2) failing to give proper weight to Mr. Hulett's survey.

ACQUISITIVE PRESCRIPTION
The Fallins contend that the trial court erred in finding that the Pesnells proved entitlement to the disputed strip of land by acquisitive prescription of 30 years under LSA-C.C. Art. 794. We agree.

Law
The law in this area was concisely summarized by this court in Odom v. Elliott, 452 So.2d 315, 318 (La.App. 2d Cir.1984):
In a judicial fixing of boundaries, the court shall fix boundaries according to the ownership of the parties. LSA-C.C. Art. 792. When both parties rely on title alone, the boundary shall be fixed according to title. LSA-C.C. Art. 793.... However, acquisitive prescription may be pled in a boundary action. Fruge v. Lyons, 373 So.2d 220 (La.App. 3d Cir.1979). Moreover, where either party proves acquisitive prescription, "the boundary shall be fixed according to limits established by prescription rather than titles." LSA-C.C. Art. 794. Simply stated, prescriptive ownership eclipses title ownership. Where neither party proves ownership by title or acquisitive prescription, boundaries are fixed according to the parties' possession rather than ownership. LSA-C.C. Art. 792.
Under Civil Code Art. 794, a title holder may acquire more land than his title calls for by possessing property beyond his title for 30 years without interruption and within visible bounds. Such a title holder may attain the thirty year possessory period by "tacking" on the possession of his ancestor in title. LSA-C.C. Arts. 794, 3442. Brown v. Wood, 451 So.2d 569 (La.App. 2d Cir.1984), writ denied, 452 So.2d 1176 (La. 1984).
The party seeking title to a tract of land through acquisitive prescription bears the burden of proof. Owens v. Smith, 541 So.2d 950 (La.App. 2d Cir.1989).
The determination of a disputed boundary is a question of fact which should not be disturbed on appeal in the absence of manifest error. See Barham v. Department of Highways, 431 So.2d 899 (La.App. 2d Cir. 1983), writ denied, 438 So.2d 1111 (La.1983); Leblanc v. Laborde, 368 So.2d 1126 (La.App. 3d Cir.1979), writ denied, 369 So.2d 1377 (La.1979).
Occasional hunting is insufficient to constitute actual corporeal possession. Norton v. Addie, 337 So.2d 432 (La.1976); Tenneco Oil Company v. Pitre, 496 So.2d 502 (La.App. 1st Cir.1986), writ denied, 497 So.2d 1388 (La.1986).

Discussion
If the Pesnells can demonstrate acquisitive prescription of 30 years under LSA-C.C. Art. 794, they can eclipse any title ownership by the Fallins. Since the Pesnells did not purchase their property until 1970, they must tack their possession to that of Mr. Simpson, their predecessor in title, in order to demonstrate acquisitive prescription of 30 years.
The Fallins contend that the trial court gave undue weight to the testimony of Mr. Simpson and Leon Pesnell.[1] They contend that the testimony of these two witnesses was so confused that the trial court should *584 have accorded it little or no weight. They attack the testimony of James Pesnell on the basis that he had insufficient contact with the property to establish any adverse possession.
We find merit in the Fallins' arguments.
On the issue of the Pesnells' possession of the property, Leon Pesnell and his son James testified. Leon Pesnell was 78 years old when his discovery deposition was taken for the possessory action and 79 years old when he testified in the trial of that matter. According to his son, Mr. Pesnell suffered from Alzheimer's disease. This condition undoubtedly explains the many confusing and nonresponsive answers which render his testimony almost incomprehensible in some places, as well as the numerous contradictions between his discovery deposition and his trial testimony. (At one point during his trial testimony, Mr. Pesnell candidly stated that he didn't know what he was doing.) At the possessory action trial, Leon Pesnell initially testified that he farmed his entire tract of land up to the possession line established by Mr. Lowe and that he cut timber up to the old fence. However, on cross-examination he testified that he had not farmed the property in the last 20 years or since the 1950's and that the only timber he cut in the disputed tract of land were some bug-infested trees recently cut by Bruce Allen. He testified that he had possessed the land by walking over it and maintained it by "looking after it." Although Mr. Pesnell claimed to have planted trees in the disputed area, he stated that it was about 30 to 40 years ago but since he bought the land.
James Pesnell, Leon's 43-year-old son, testified that he had occasionally hunted alone on the disputed tract and that his family cut their family Christmas tree there five or six times. However, he also testified that they had never harvested timber on the disputed tract since purchasing it in 1970.
Bruce Allen, a land surveyor and a mutual friend of the Pesnells and the Fallins who examined the tract in an effort to help his friends resolve this dispute, testified that he did not see any evidence that timber had been cut in the last 20 years.
As to the possession exhibited by Mr. Simpson, the previous owner, he testified in his deposition as to activities that occurred on the property in the 1930's and 1940's. In fact, he testified that the last time he even walked the old fence line was in about 1934.
Based on the above, we are unable to conclude that the Pesnells proved their own possession of the property, much less that of Mr. Simpson. They did not produce sufficient evidence to demonstrate acquisitive prescription of 30 years under LSA-C.C. Art. 794.
Furthermore, we seriously question whether the fence remnants in this case are sufficient to constitute a "visible boundary" under LSA-C.C. Art. 794. According to Bruce Allen and Albert Hulett, arguably the two most objective witnesses, one had to expend considerable time and effort to locate the old fence line, which consisted of two or three pieces of wire embedded in some trees, running north-south for 600 to 700 feet.[2] See Owens v. Smith, supra. Also, we note that there was no evidence as to who built the fence line or for what purpose it was constructed.

HULETT'S SURVEY
Since we find that the Pesnells failed to prove acquisitive prescription, we must establish the boundary according to the titles of the parties. At this point, Mr. Hulett's survey becomes relevant.
The Fallins contend that the trial court failed to accord the proper weight to Mr. Hulett's survey because the court erroneously believed that it was dependent upon a prior survey by Virgil Collins. They maintain that the trial court ignored Hulett's testimony that he performed a complete retracement survey, basing his work on the original U.S. government field survey notes *585 and using the work of other surveyors like Mr. Collins as controls. In opposition, the Pesnells argue that the trial court gave due consideration to Mr. Hulett's survey.

Law
It is the duty of a surveyor to retrace prior government surveys in order to establish original section corners and lines. Bergeron v. Fournier, 426 So.2d 658 (La.App. 1st Cir.1982); Morris v. Sigur, 584 So.2d 729 (La.App. 4th Cir.1991), writ denied, 589 So.2d 1054 (La.1991). If the original corners and lines of the government surveys can be found, they must be followed since they are the highest and best evidence of the location of the government surveys. Cheramie v. Vegas, 194 So.2d 189 (La.App. 1st Cir.1966), writ refused, 199 So.2d 918 (La.1967).
When the original corners and lines have been obliterated, natural objects and monuments are to be followed in identifying the prior surveys. Natural objects and monuments are more important than courses and distances in retracing old surveys and ascertaining the location of unknown and disputed lines. Cheramie, supra; Morris, supra; Liner v. Terrebonne Parish School Board, 519 So.2d 777 (La.App. 1st Cir.1987), writ denied, 521 So.2d 1173 (La.1988), cert. denied, 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988); Barham v. Department of Highways, supra.
Where the original government survey markers have been lost, the party seeking ownership of the property need only prove the location of the property based upon accurate and competent evidence in accordance with applicable jurisprudential principles and accepted surveying principles. Liner, supra.
A survey predicated on sound surveying principles should be accepted unless the record shows it is incorrect. Smith v. Scarpengos, 56 So.2d 757 (La.App. 2nd Cir.1952); Liner, supra; Barham, supra; Morris, supra.

Discussion
The record demonstrates that Mr. Hulett conducted an extensive and thorough survey of the Pesnell property.[3] He obtained a copy of the original government survey field notes, as well as the field notes of two noted local surveyors, Virgil Collins and Albert Crowson. In particular, Collins had performed an earlier resurvey of Section 2 and 3 using the original notes. After performing a complete retracement survey of Collins' work, Mr. Hulett found that it was acceptable for use as one of the major controls in his own survey. Although Mr. Hulett was unable to personally recover any of the original corner positions, Collins' notes indicated that he had by finding evidence of the original bearing trees. To verify that Collins' corners were acceptable, Mr. Hulett relied upon the distances to the creek calls in the government notes. Mr. Hulett estimated that he had spent 110 hours of field work and 35 hours of office work in completing his survey for the Pesnells.
In contrast, Mr. Lowe testified that a crew that worked for him spent about 10 hours on the Pesnell property. He testified that to establish the line between the two tracts he looked at the "local evidence" and the evidence by "common report" (which is the fact that there is an existing corner which appears to be what other surveyors have used). His contention that Mr. Hulett had not followed proper procedure in his survey appeared to be based on Mr. Hulett's failure to find the bearing trees from the original government notes or evidence of them. However, he did not testify that he was able to recover the bearing trees or that they were still in existence. Furthermore, Mr. Lowe conceded that he had not performed a property survey and that the map he prepared was only to show the difference in what he considered to be the possession line and Hulett's survey line. Unlike Mr. Hulett, he did not examine the survey notes of Mr. Crowson, who he admitted was an "excellent" surveyor.
Since the original government survey markers have become lost and unrecoverable, *586 the Fallins were only required to prove the location of the property based upon "accurate and competent evidence" in accordance with applicable jurisprudential principles and accepted surveying principles. The evidence in this record does not demonstrate that Mr. Hulett's survey, which was predicated on sound surveying principles, was incorrect. To the contrary, the record demonstrates that Mr. Hulett made every reasonable effort to retrace the original government survey. It was manifest error for the trial court to completely disregard the Hulett survey.
Therefore, establishing the boundary by the title of the parties, we direct that the boundary line between the Fallin and Pesnell tracts be fixed in accordance with the survey prepared by Mr. Hulett, which was admitted into evidence as Exhibit P-2.

CONCLUSION
For the reasons assigned above, we reverse the judgment of the trial court and establish the boundary between the property of the parties in accordance with the survey of Albert Hulett.
ACCORDINGLY, IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiffs, HENRY FORD FALLIN AND BETTE JO ROANE FALLIN, and against the defendants, LEON PESNELL AND ANNIE LOU PESNELL, establishing the boundary between their contiguous tracts of land in Section 3, Township 17 North, Range 2 West of Jackson Parish, Louisiana, in accordance with the survey by Albert Hulett, Jr., a copy of which was filed into evidence in this suit.
Costs are assessed against the appellees, Leon and Annie Lou Pesnell.
REVERSED AND RENDERED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, BROWN, WILLIAMS and GASKINS, JJ.
Rehearing denied.
NOTES
[1] The record indicated that Mr. Simpson died between the conclusion of the possessory action and the trial in the petitory action; therefore, his trial deposition from the possessory action was admitted into evidence in the instant suit. Since Mr. Pesnell was precluded from testifying in the petitory action by Alzheimer's disease, his discovery deposition and trial testimony from the possessory action were likewise admitted.
[2] Mr. Hulett testified that he did not find evidence of the fence during his survey for the Pesnells. After the Pesnells decided that the Hulett survey was five or six acres short of the acreage their deeds recited, Leon Pesnell asked him to go back and specifically try to find the old fence line on the west boundary. Mr. Hulett testified that it required considerable time to locate a small vestige of the old fence.
[3] It is noteworthy that Mr. Hulett was originally hired by the Pesnells. He was not an expert hired by the Fallins strictly for litigation purposes.