728 So.2d 1052 (1999)
Ernest Rayford GUILLOT, et al., Plaintiffs-Appellants,
v.
Clyde EVANS, Defendant-Appellee.
Ernest Rayford Guillot, et al., Plaintiffs-Appellants,
v.
William-Ann Corporation, Defendant-Appellee.
Ernest Rayford Guillot, et al., Plaintiffs-Appellants,
v.
William Albert Evans, Defendant-Appellee.
Ernest Rayford Guillot, et al., Plaintiffs-Appellants,
v.
Charles Richard Hill, Defendant-Appellee.
Nos. 31,591-CA to 31,594-CA
Court of Appeal of Louisiana, Second Circuit.
February 26, 1999.
Rehearing Denied March 25, 1999.
*1053 Michael E. Kramer, Winnsboro, Counsel for Appellants.
Iley H. Evans, Eugene Allen, Columbia, Counsel for Appellee.
Before STEWART, PEATROSS and DREW, JJ.
STEWART, J.
This appeal stems from four separate boundary/ownership disputes between plaintiffs-appellants and defendants-appellees involving land located in rural Franklin Parish. After consolidating the four disputes for trial, the trial court rendered judgment in favor of the defendants and rejected the plaintiffs' claims of ownership of the disputed areas based on acquisitive prescription of thirty *1054 years. We find no error in the trial court's judgment and affirm.

FACTS
The plaintiffs, Ernest Rayford Guillot, Dorothy Guillot, and Gertie Guillot, own two contiguous tracts of land used for agricultural purposes. The plaintiffs' property was purchased in 1951 by Ernest Guillot, the deceased husband of Gertie Guillot and the father of Ernest Rayford Guillot and Dorothy Guillot. The defendants, Clyde Evans, the William-Ann Corporation ("William-Ann"), William Albert Evans, and Charles Richard Hill, each own separate tracts of land adjacent to the plaintiffs' land on three sides. In dispute are the boundaries between the plaintiffs' and the defendants' respective tracts of land.
The Guillots contend that their land is separated from the adjacent tracts by natural and visible barriers, including a turn row, a gum tree and ditch, a tree line with fence remnants, and a gravel road. A 1996 survey indicates that the actual boundaries between the Guillots' and the defendants' tracts of land fall within the area claimed by the Guillots. As such, ownership of the strips of land between the visible barriers described by the Guillots and the survey boundary line is in dispute. The Guillots do not challenge the accuracy of the survey, but assert that they have possessed as owners all the land up to the visible or natural barriers in excess of thirty years.
The Guillots initially filed four separate possessory actions which were consolidated for trial. After receiving a directed verdict in favor of William-Ann, the Guillots filed amended petitions in each suit and asserted claims of ownership of the disputed areas based on acquisitive prescription of thirty years. To establish the requisite thirty year period, testimony was limited to events from 1960 to the present. After listening to extensive testimony and reviewing numerous exhibits, the trial court found that the Guillots failed to establish their possession as owners of the disputed areas for the requisite thirty year period and denied their claims. The Guillots now appeal.

DISCUSSION
The essential issue in this matter is the determination of boundaries between the Guillots' tracts of land and the defendants' respective tracts of land based on the Guillots' claims of acquisitive prescription. The Guillots do not challenge the accuracy of the parties respective titles, nor do they challenge the correctness of the 1996 survey, which indicates the boundary lines according to titles and according to the Guillots' alleged possession. We therefore consider this to be a case of a titleholder who claims, by virtue of acquisitive prescription, more land than called for in his title.
By possessing for thirty years, within visible bounds and without interruption, more land than the title calls for, a titleholder may acquire the additional land through acquisitive prescription. La. C.C. art. 794; Fallin v. Pesnell, 27,814 (La.App. 2nd Cir. 1/24/96), 667 So.2d 581; Brown v. Wood, 451 So.2d 569 (La.App. 2nd Cir.1984), writ denied, 452 So.2d 1176 (La.1984). The party who seeks title to a tract of land through acquisitive prescription bears the burden of proof. Fallin v. Pesnell, supra; Owens v. Smith, 541 So.2d 950 (La.App. 2nd Cir.1989). The proof required under La. C.C. art. 794 is the same proof required to prove ownership in a petitory action based on a plea of thirty years acquisitive prescription. Hargis v. Verenco, Inc., 482 So.2d 1045 (La. App. 3rd Cir.1986).
To acquire property through acquisitive prescription, one must take corporeal possession of the thing and must intend to possess as owner. Corporeal possession is the exercise of physical acts of use, detention or enjoyment over a thing. La. C.C. arts. 3424 and 3425; Livingston v. Unopened Succession of Dixon, 589 So.2d 598 (La.App. 2nd Cir.1991).. Possession, for purposes of acquisitive prescription without title, extends only to that which has actually been possessed. La. C.C. art. 3487. Possession must be continuous, uninterrupted, peaceable, public, and unequivocal. Bennett v. Louisiana Pacific Corp., 29,598 (La.App. 2nd Cir. 5/9/97), 693 So.2d 1319, review denied, 97,1552 (La.10/3/97), 701 So.2d 199.
*1055 What constitutes adverse possession depends on the nature of the property and is a question which must be determined in each case on its own facts. Id. Generally, acts of possession required in the case of farm land must be of a greater quality than in the case of woodland. Chevron U.S.A. Inc. v. Landry, 558 So.2d 242 (La.1990). Whether one intends to possess as owner may also be inferred from the surrounding facts and circumstances in a case. Livingston v. Unopened Succession of Dixon, supra. Furthermore, whether a disputed property has been possessed for thirty years without interruption is a factual issue that will not be disturbed on appeal absent a showing of an abuse of discretion. Bennett v. Louisiana Pacific Corp., supra.

Guillot v. William-Ann Corp.
The Guillots claim ownership through possession in excess of thirty years of a strip of land up to a ditch and gum tree. The ditch and gum tree are the barriers which the Guillots claim delineate the boundary, based on possession, between their land and the land owned by William-Ann. The Guillots' tract of land is located north of the ditch and gum tree, and the record contains undisputed testimony that only the Guillots farmed north of the ditch and gum tree. According to the 1996 survey, a strip of land north of the ditch and gum tree is owned by William-Ann as titleholder.
The trial court denied the Guillots claim upon finding that the record owners of the William-Ann land did not have notice of possession adverse to their interests until 1985, when the Guillots changed the direction of their rows and plowed a portion of the turn row located adjacent to the ditch and gum tree. The trial court found that prior to 1985, both the Guillots and the owners and tenants of the William-Ann land used the turn row without exclusion and determined that common use of a turn row is not sufficient to establish adverse possession for purposes of acquisitive prescription. These factual findings are supported by the record.
According to testimony, the Guillots farmed in a north/south direction prior to 1985. During that time, a visible turn row existed north of the ditch and gum tree. Testimony establishes that the north turn row was used by others, in addition to the Guillots, prior to 1985. Lawrence McMahon testified that he used the north turn row "several times" during the 1970's when he farmed in the area. He also recalled renting a house formerly located near the gum tree to a laborer who used a driveway located in the disputed area to reach the house. Charles McMahon testified about using the north turn row as access to the William-Ann land while helping his father, Lee McMahon, farm in the mid-1970's. Charles McMahon also stated that he used the north turn row to haul hay and that the Guillots never tried to prevent him from using the turn row.
John D. Duncan, who farmed the William-Ann land from 1979 to the present, also testified about joint use of the north turn row with the Guillots. Duncan stated that in 1980, he cut some trees and thinned an area of the ditch so that a tractor could cross. Thereafter, Duncan mostly used the south turn row. Additionally, Duncan testified that once or twice he chopped some of the Guillots' north/south rows that appeared to be too far over the line. With regard to the Guillots' change in row direction around 1985, Duncan testified that the Guillots gradually began moving their east/west rows over the line each year.
The testimony of Ernest Rayford Guillot and his son, Randy Guillot, indicated that they planted as close to the ditch and gum tree as they could get. They denied seeing others use the north turn row, but admitted that they did nothing to prevent others from using it. According to Randy Guillot, there was no longer a north turn row once they began planting east/west rows in the mid-1980's.
The Guillots argue that they possessed the disputed area north of the ditch and gum tree from 1960 to the present and that the "sporadic" use of the turn row by others did not interrupt or disturb their possession. The primary issue, however, is not whether the Guillots' possession was interrupted, but whether the Guillots satisfied the requisites of acquisitive prescription by adverse possession. The record supports the trial court's *1056 conclusion that adverse possession did not begin until the change in direction of the rows in the mid-1980's. Prior to that event, the disputed area appears to have consisted primarily of the north turn row, which others freely used.
The Guillots argue that the north turn row should be considered an integral part of their cotton field because of its importance in farming operations. However, the north turn row was also used by others conducting farming operations, including the record owners of the disputed area. While the Guillots may have used the north turn row on a more frequent basis than others, such use would not signal adverse possession when others also freely used the turn row.
Because the facts and circumstances of this case indicate that adverse possession of the disputed area did not begin until the mid-1980's when the Guillots' changed row direction and plowed into the north turn row, we find no error in the trial court's findings and denial of this claim.

Guillot v. Clyde Evans
The Guillots assert that the boundary between their land and Clyde Evans' land is the middle of a turn row that separates their respective tracts of land. The Guillots assert that they have possessed the entirety of the land up to the center of the turn row in excess of thirty years. The Guillots' land is located north of the turn row, and Evans' land is south of the turn row.
The trial court denied the Guillots' claim of ownership up to the center of the turn row upon finding that both parties used the turn row. The trial court determined that common use of the turn row is not sufficient possession to the exclusion of the record owner and does not manifest an intent to possess as owner.
The Guillots do not appeal the trial court's determination with regard to ownership of the turn row. Rather, the Guillots contend that the trial court failed to consider additional property located north of the turn row and included within the disputed area on the 1996 survey. The Guillots assert that they farmed the thin strip of land north of the turn row in excess of thirty years and that common use of the turn row would not constitute an interruption of adverse possession of the land north of the turn row.
We have reviewed the trial court's reasons for denial of this claim and do not find that the trial court failed to consider the Guillots' claim of ownership of the strip of land north of the turn row. Rather, the trial court denied the Guillots' claim of ownership "to the centerline of the turn row." We interpret the trial court's ruling to include all land claimed north of the turn row. The trial court's ruling is supported by the record which fails to establish the exact extent of the Guillots' possession of the land north of the turn row for the requisite thirty year period.
Initially, we note some lack of clarity in the record as to the amount of land in dispute north of the turn row. Randy Guillot testified that two rows were lost behind a fence erected by Clyde Evans after the survey. Clyde Evans testified that the survey line ran along the first row of the Guillots' land when measured in 1995. Thus, approximately one or two rows were lost behind the survey line. The record also indicates that the Guillots changed the direction of their rows in the mid-1980's, from a north/south direction to an east/west direction. Frank Denmon, who has farmed with the Guillots since 1972, testified that the north/south rows went up to the edge of the turn row; whereas, Clyde Evans testified that the north/south rows were only within two or three feet of the turn row. Both the change in row direction and the discrepancies regarding the distance of the north/south rows from the turn row and the amount of land lost behind the survey line prevent any accurate determination of the Guillots' corporeal possession of land north of the turn row during the thirty-year period. Therefore, we find no abuse of discretion in the trial court's denial of this claim.

Guillot v. William A. Evans
The Guillots contend that a tree line entwined with an old fence constitutes the boundary separating their land from the land owned by William A. Evans and that they have possessed the land up to the tree line in *1057 excess of thirty years. There is no dispute that the Guillots have been the only farmers of the property west of the tree line. Evans owns the property east of the tree line. Ownership of a turn row located between the tree line and the Guillots' crops is in dispute.
The trial court denied this claim upon finding common usage of the turnrow insufficient to establish adverse possession. According to the trial court, Evans was neither excluded from using the turn row nor put on notice that the Guillots claimed, as owners, the turn row west of the tree line. The Guillots contend that they had exclusive use of the turn row and that any "minimal and leisurely use" of the turn row by Evans did not interrupt their adverse possession.
The testimony establishes that the Guillots farmed as close to the tree line as they could get while leaving space for the turn row. Gayo Boone, who rented the Evans' property for a time, testified that he never used the turn row west of the tree line. Randy Guillot testified that he never saw Evans use the turn row. However, there is conflicting testimony as to use of the turn row by parties other than the Guillots. Shelby Williams, who farmed with the Guillots, testified that both Evans and Charles Hill drove on the turn row. William Evans also testified that he used the turn row sometimes as often as three times per day. Evans also testified that he was aware of the correct boundary line as early as 1962 when his grandfather pointed it out to him. Evans also claimed that it was his father who maintained the disputed turn row.
The Guillots argue that Evans' testimony lacks credibility because there would have been no reason for him to use the turn row, especially as often as three times per day. When there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Rosell v. ESCO, 549 So.2d 840 (La.1989). The fact finder's choice between two conflicting, but permissible, views of the evidence cannot be manifestly erroneous. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). Faced with the conflicting evidence presented, the trial court was called upon to make credibility determinations. In doing so, the trial court accepted the testimony indicating common usage of the turn row. The trial court's finding of common usage is not manifestly erroneous.
As previously discussed, the Guillots' use of the turn row does not signal adverse possession when others also freely use the turn row. The Guillots have not satisfied the burden of proving adverse possession for thirty years. We find no error in the trial court's denial of this claim.

Guillot v. Charles Richard Hill
The Guillots assert that a gravel road designates the boundary between their land and the land owned by Hill. They claim ownership of all of the land up to and adjacent to the west border of the gravel road based on possession as owners in excess of thirty years. The trial court denied the Guillots' claim upon finding that there was no set boundary in existence for the thirty year period due to a change in the location of the road. The Guillots dispute this finding. They argue that erroneous testimony was presented regarding a change in location of the road after 1960, and they assert that aerial photographs show that the location of the road remained unchanged from 1960 to the present.
There is no dispute that the Guillots farmed west of the road from 1960 to the present. However, the record contains conflicting testimony regarding the location of the road over the years and the distance between the Guillots' rows and the road. According to the testimony of Ernest Guillot, the road was originally curved and was later straightened. Two other witnesses familiar with the road, Claudie Sewell and Carey Stevens, also testified that the road was crooked at one point and later straightened. However, there testimony did not clearly indicate the dates of any change in the road location. Ernest Guillot also testified that he planted as close to the road as he could get. Shelby Williams testified that the Guillots farmed as close to the road as the equipment could get, but that they did not use the road as a turnrow. Further testimony concerning a change in location of the road was offered by Frank Denmon, who began working with *1058 the Guillots in 1972. Denmon testified that the road had been moved a little to the east since 1972. Denmon also testified that the Guillots left sufficient room for a turnrow when planting rows in a north/south direction and that they planted the east/west rows about ten to thirteen feet from the road, leaving room for a turnrow. Randy Guillot testified that he installed a water well in 1982, along with a ridge row for pipe adjacent to the road.
This testimony taken together supports the trial court's finding that there was no definite boundary in existence for the requisite thirty year period. While the road did exist throughout the thirty year period at issue, as indicated by the aerial photographs introduced into evidence, the testimony indicates that a change occurred in the location of the road during the thirty year period. The change in location of the road resulted in a change in location of the boundary. The shift in boundary precludes determination of the exact extent of the Guillots' possession for the requisite thirty year period. It does not appear that the boundary became definite until 1982, when Randy Guillot installed the water well and ridge row along the road. Therefore, we find no error in the trial court's denial of this claim.

CONCLUSION
Having found no error in the trial court's denial of the Guillots' claims for ownership of the land in the disputed areas, we affirm the trial court's judgment. Costs of this appeal are assessed against the Guillots.
AFFIRMED.

APPLICATION FOR REHEARING
Before GASKINS, STEWART, CARAWAY, PEATROSS and DREW, JJ.
Rehearing denied.