CHEHARDY, Chief Judge.
Plaintiff, Dorothy Volz, appeals a judgment granting a motion to enforce a settle *1312 ment agreement with defendants The Hertz Corporation, Leroy Taylor and Monroe Systems for Business, Incorporated. The defendants have answered the appeal, seeking damages for frivolous appeal, including attorney’s fees, and praying this court to grant their exception of res judica-ta and to dismiss the plaintiff's suit.
Although this appeal was lodged in this court as a consolidated suit with 89-CA-141, Halkias v. Hertz Rent-A-Car, et al., no appeal was taken in No. 89-CA-141 and therefore we shall render no judgment therein.
The lawsuit arises from an April 29, 1983, vehicular collision on Veterans Memorial Boulevard in Metairie, Louisiana. Dorothy Volz’s automobile was struck from the rear by an automobile owned and operated by John T. Gaunt, which was propelled into Volz’s vehicle when struck from behind by an automobile owned by Hertz. The Hertz vehicle was rented to and being operated by Leroy Taylor, who was an employee of Monroe. Both Volz and her passenger, John T. Halkias, claimed injuries as a result of the accident.
Halkias filed suit in the 24th Judicial District Court for the Parish of Jefferson; Volz filed suit in Civil District Court for the Parish of Orleans. On a motion for change of venue by Hertz, Volz’s suit was transferred to the 24th Judicial District Court, where it was consolidated with Halkias’ suit. Also made defendants in both suits were other parties not before the court on this appeal.
After prolonged pretrial discovery and litigation, Halkias settled with defendants Hertz, Taylor and Monroe a few days before trial and dismissed them from his suit.
Volz had changed attorneys several times during the course of the litigation. She was first represented by Floyd Reed, then by Allain Hardin. After she dismissed them, both these attorneys intervened in the lawsuit and filed copies of their contingency fee contracts. At the time of the settlement at issue herein, Volz was represented by Joseph Harvin and Hugh Exnicios.
On January 8, 1988, a day after Halkias’ settlement, Harvin appeared on behalf of Volz to dictate into the record her settlement with Hertz, Taylor and Monroe. Har-vin stated that he had received specific and express consent to settle Volz’s claim for $25,000.
A few days later defense counsel, George Hebbler, forwarded the check and settlement documents to Harvin for Volz’s signature. After more than a month passed without response, Hebbler made inquiry of Harvin and was informed that Volz had decided not to accept the settlement, had dismissed Harvin and Exnicios as her attorneys, and had retained new counsel. Harvin returned the check and settlement documents to Hebbler. Subsequently Harvin and Exnicios filed an intervention to protect their right to a fee.
Because of Volz’s refusal to complete the settlement, the defendants filed a motion to enforce the settlement agreement on March 18, 1988. Volz’s new counsel, Darken Jacobs, filed an opposition to the motion, asserting that the settlement was void because it had been made without the written consent of Volz’s original attorney, Reed, contrary to the provisions of his contract with Volz.
On June 30, 1988, the district court rendered judgment finding the settlement agreement of January 8, 1988, to be valid and enforceable. The court ordered Volz, upon receipt of the settlement check, to execute the documents and to dismiss her claims as to the settling defendants.
Defense counsel forwarded the check and documents to Jacobs, but these were never signed. Consequently, on July 28, 1988, the defendants filed a rule seeking to make Volz and her present and former attorneys show cause why they should not endorse the settlement draft over to the Clerk of Court to be placed in the court registry and why the claims against Hertz, Taylor and Monroe should not be dis *1313 missed. Alternatively, the defendants urged that the suit be dismissed on the basis of res judicata since the court had previously held the settlement to be valid and enforceable. The hearing on the rule was set for November 2, 1988.
On August 29, 1988, Volz’s motion for a devolutive appeal from the June 30th judgment was signed. Because the signing of the motion for appeal divested the trial court of jurisdiction over this matter, the rule set for November 2, 1988, was never tried.
Prior to considering the merits of this appeal, we must address a jurisdictional problem noted in our review of the record, namely that the judgment appealed is interlocutory rather than final. Normally interlocutory judgments are not appeal-able. Under LSA-C.C.P. art. 2083, however, an interlocutory judgment may be appealed if it may cause irreparable injury.
In Rhodes v. Nalencz, 545 So.2d 638 (La.App. 5 Cir.1989), a similar motion to enforce a settlement, this court found that a judgment ordering a party to sign a compromise within 30 days was an interlocutory judgment because it did not dismiss the plaintiffs suit. Rather than dismissing the appeal, however, we exercised our supervisory jurisdiction to treat the appeal as an application for writs.
We reasoned that the appellant-relator would have no adequate final remedy on appeal if he appealed the final judgment dismissing his suit, since he would have had to sign the compromise and would have been precluded from going forward with the merits of his claim against the defendants. In addition, he would have been subject to contempt proceedings because the judgment ordered him to sign the compromise within 30 days. Accordingly, we concluded the appellant-relator was entitled to relief.
Similar reasoning applies here. The appellant could suffer irreparable injury by having her case dismissed if she is forced to sign the compromise or if she refuses to do so. Unlike the Rhodes case, however, there is no time limit placed upon her; accordingly, there is no reason to treat the matter by the expedited method of supervisory writ review. Instead, we shall handle the matter as an appeal of an interlocutory judgment that may cause irreparable injury, as allowed by C.C.P. art. 2083.
Regarding the merits of the appeal, Volz reiterates her claim that the settlement is invalid because Floyd Reed did not give written consent as required by her contingency fee contract with him. She cites the provisions of LSA-R.S. 37:218, which states that if an attorney-client contract that requires written consent of both the attorney and the client to settle a case is filed with the clerk of court, any compromise by one party without the written consent of the other is null and void.
In addition, Volz contends on appeal for the first time that she did not authorize Harvin to accept the $25,000 settlement. She relies on the original contract with Reed, filed into the record two years prior to the settlement, under which her written consent was required for settlement. She asserts her written consent was never obtained.
In response, the defendants point to an affidavit filed by Reed on June 28, 1988, in which he states he was apprised of and agreed to the settlement and has no objection to it. The defendants also cite Scott v. Kemper Ins. Co., 377 So.2d 66 (La.1979), in which our Supreme Court held that R.S. 37:218 cannot be literally applied so as to permit a discharged attorney with a recorded contingency fee contract to nullify the client’s later filed settlement.
R.S. 37:218 states, in pertinent part:
“By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit * * * in the assertion, prosecution or defense of which he is employed * * *. In such contract, it may be stipulated that neither the attorney nor the *1314 client may, without the written consent of the other, settle, compromise, release, discontinue or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending * * *. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition had been made.”
In the Scott case, supra, the relator was an attorney who entered into a contingency fee contract with the plaintiff that incorporated the “no settlement without consent” provision. After being discharged by the client, he recorded his contract as required by R.S. 37:218 and intervened in the lawsuit. The client, with new counsel, later made a settlement with the defendant without the concurrence or assent of the inter-venor-relator, who then attempted to have the settlement declared null and to be permitted to proceed with the suit as if no compromise had been made.
The court, citing its ruling in Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978), pointed out that the Louisiana State Bar Association’s Code of Professional Responsibility, set forth by virtue of the Supreme Court’s exercise of its prevailing judicial authority to regulate the practice of law, has the force and effect of substantive law. Thus, “these rules * * * override legislative acts which tend to impede or frustrate that authority” and “only legislative enactments in this area which aid the Court’s inherent powers will be approved.” Scott, supra, at 69, citing Saucier, supra, at 115.
Referring to Disciplinary Rules 2-110(B)(4) and 5-103 of the Code of Professional Responsibility (which provide, respectively, that a client has an absolute right to discharge his attorney and that a lawyer may not acquire a proprietary interest in the client’s cause of action), the Scott court decided,
“[A]n attorney can neither force his continued representation of a client who wishes to discharge him, nor obtain, by any means, a proprietary or ownership interest in the client’s claim. Therefore, he may not proceed with the suit or claim as if settlement had not been made. And he has no right to interfere with or nullify the settlement which his former client has made * * *.” (Emphasis added.)
Id., at 70.
Given the ruling that the attorney himself may not annul a settlement by a former client despite contrary wording in the contract between them, it is clear that a client cannot assert a right on behalf of the attorney that the attorney himself cannot assert.
Further, we find no merit to Volz’s attempt to vacate the settlement for Har-vin’s failure to obtain her written consent. The contract on which she relies was with Floyd Reed. Harvin was not a party to that contract. At the time Harvin made the settlement based on Volz’s oral consent, his contract with her had not been filed into the record and, therefore, the defendants had no notice that her written consent would be required for a settlement by Harvin. See Singleton v. Bunge Corp., 364 So.2d 1321 (La.App. 4 Cir.1978). Moreover, even if it had been filed into the record, we note that her contract with Exn-icios and Harvin did not require her written consent for a settlement.
Next we address the appellees’ answer to the appeal. The defendants-appellees assert that the issue raised on this appeal was plainly settled by the Scott case and, thus, had no basis in law or fact, entitling the defendants to damages and attorney’s fees for frivolous appeal.
Damages for frivolous appeal are awarded under LSA-C.C.P. art. 2164 only when it clearly appears that the appeal was taken *1315 solely for the purpose of delay or that counsel for the appellant does not seriously believe in his legal position. Sellers v. Barthelemy, 520 So.2d 1219 (La.App. 5 Cir.1988); Fouchi v. Fouchi, 442 So.2d 506 (La.App. 5 Cir.1983), writ denied, 445 So.2d 1235 (La.1984).
Although the issues raised by the appellant are of debatable validity, we cannot say the appeal was taken solely for the purpose of delay. Nor is it clearly apparent that appellant’s counsel does not seriously believe in her legal position. Accordingly, damages for frivolous appeal are denied.
Finally, we must deal with the ap-pellees’ exception of res judicata.
“A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.”
LSA-C.C. art. 3071.
“Transactions have, between the interested parties, a force equal to the authority of things adjudged.” LSA-C.C. art. 3078.
However, a distinction must be made between the right to judicial enforcement of performance of the compromise and the res judicata effect of the completed compromise. ' A compromise cannot acquire the force of the “thing adjudged” until the compromise itself is completed. See Benson v. Metropolitan Cas. Ins. Co. of New York, 79 So.2d 345 (La.App. 2 Cir.1955), writ denied May 23, 1955. We conclude the exception of res judicata is premature at this stage of the proceedings. The defendants’ motion to enforce settlement and subsequent rule to show cause were the appropriate remedies pursuant to C.C. art. 3071.
For the foregoing reasons, the judgment of the district court finding the settlement valid is affirmed. Because the transaction has not been finalized, we remand the matter to the district court for proceedings to complete the settlement and to dismiss the settling defendants from the suit. Costs of this appeal are assessed against appellant.
AFFIRMED AND REMANDED.